| | |
|---|---|
| STATE OF COLORADO | ) RE: EEOC CHARGE NO. 32A-2018-00123 |
| Federal Court | ) Colorado Regulatory Civil Rights No. FE20182356751 |
| County of Denver | ) |
| | ) |
| Raquell Neill | ) |
| 11481 NW 41st, Apt.7406 | ) |
| Doral, FL 33178 | ) |
| | ) |
| VS | ) DISCRIMINATION CHARGE WITH RETALIATION |
| | ) |
| Frontier Airlines | ) |
| 7100 Tower Road | ) '19 - CV - 02362 |
| Denver, CO 80249 | ) |

FILED
U.S. DISTRICT COURT
DISTRICT OF COLORADO
2019 AUG 19 PM 3:26
JEFFREY P. COLWELL
CLERK
BY__________DEP. CLK

Comes now the Petitioner, Raquell Neill and petitions this Honorable Court regarding suit against Frontier Airlines, who was Petitioner's former employer. The Petitioner has been advised by the EEOC, regarding the Charge of Discrimination with an Amended Charge of Discrimination for Retaliation, that she does has the right to sue Frontier Airlines for these issues. Whereby, the Petitioner submits this suit based on the following reasons:

1) The EEOC did open a full investigation into the Charge of Discrimination with the Amended Charge of Discrimination for Retaliation. The charge was filed in December of 2017 and it was closed by dismissal and notice of rights on June 6, 2019. (Please see exhibit 1)
2) AND within the Dismissal and Notice of Rights letter the EEOC stated specifically ***This does not certify that the respondent is in compliance with the statues.***
3) In addition, further correspondence was received from EEOC as Petitioner pressed on and requested more information. (See Exhibit 2) With that being said, Petitioner is pressing on with filing suit for compensation from Frontier Airlines for reasons of Discrimination with Retaliation in the amount of $300,000 for the financial devastation this has caused Petitioner and for mental anguish.
4) The EEOC determined they were unable to conclude that Frontier Airlines violated statues. However, Petitioner, takes issue with this and since the EEOC has given Petitioner a notice of the right to sue, Petitioner is moving forward based on facts as follows.
   a) Frontier Airlines did interview Will Evans 60 days prior to the position he obtained. (See exhibit B) This is a fact.
   b) Frontier Airlines told the EEOC that they did interview "others" for the position, however, Petitioner knows the job was never posted for her to apply and the position was given to a male, who was allowed to interview for it. The interview took place way before Petitioner was even made aware of the position or opportunity being available. Again, this happened 60 days prior.
   c) Frontier Airlines claims they did post the position, however, no proof of that was given with a date stamp nor did the EEOC speak to it – only that "others" were interviewed. Fact is there were peers of Petitioner who also did not see the posted position.
   d) Frontier Airlines also claims Petitioner never applied for the position. However, Petitioner did ask to apply for the position verbally, in a meeting, where there were other employees present. And Frontier Airlines even acknowledges it in their response dated 5/11/18. Even if Petitioner missed the opportunity to apply, Frontier's handbook does speak of employees being allowed to apply if they ask after the posting. Petitioner did request to apply and was never given the opportunity, nor was there ever a reason given as to why. Nor was there any explanation given as to why the job wasn't posted in the first place. Petitioner is once again crying foul because she did not see the open position in writing

and is asking for proof with a date stamp to be provided. Again, there were other employees who also never saw the opening. Whereby Petitioner takes issues with the "others" being interviewed? Regarding the evidence the EEOC speaks to falls into the category of the stars. Stars are in the sky, yes. However, stars are evidence there could be more to the big picture. That being said, this case holds the same type of scenario regarding this big picture scenario. There is more to the big picture and Petitioner is crying foul regarding this entire process.

e) It should be noted here all of Petitioner's reviews of her employment were acceptable.

f) Further, Petitioner continues to question Frontier's "commitment to equal opportunity for its employees" based on Frontier Airline's response to the Colorado Regulatory Civil Rights, date May 11, 2018. See exhibit 3 regarding a full investigation. As Frontier Airlines, within their response, stated a formal investigation has not yet been done on their part. If Frontier truly "practiced" providing a workplace free of discrimination, why wasn't a full investigation done in December, when Petitioner filed the complaint? This alone speaks volumes regarding Frontier Airlines character in this matter. Please see more notes and questions and answers from Colorado Regulatory Civil Rights to Petitioner. Exhibit 4.

5) In addition, please see the attached Exhibits D and E where Frontier Airlines offered Petitioner different severances IF Petitioner did not pursue the Discrimination Charge.

6) Petitioner was placed in a bad place financial by losing her job at Frontier Airlines and was not able to afford an attorney and therefore has represented herself. Petitioner cannot help but feel this case would have gone farther with an attorney who knows how to enforce the law.

WHEREFORE: The Petitioner prays that this Honorable Court, after reviewing the documents presented, grant such relief to Petitioner based on the right to sue, by the EEOC, for discrimination with retaliation as charge.

Signed: [signature] Dated: 8/19/19

Raquell Neill
11481 NW 41st, Apt.7406
Doral, FL 33178
303-898-0032

August 19, 2019

Exhibit 1

EEOC Form 161 (1/08)

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

To: Raquell Neill
11551 Lakeside Drive
Doral, FL 33178

From: Denver Field Office
303 East 17th Avenue
Suite 410
Denver, CO 80203

[ ] *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR § 1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 32A-2018-00123 | Philip Gross, Supervisory Investigator | (303) 866-1318 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans with Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[X] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge

[ ] Other *(briefly state)*

**- NOTICE OF SUIT RIGHTS -**

*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act**: This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS from your receipt of this Notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA)**: EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

Amy Burkholder,
Field Office Director

JUN 06 2019
*(Date Mailed)*

Enclosure(s)

cc: FRONTIER AIRLINES
LITTLER MENDELSON, P C

Enclosure with EEOC Form 161 (11/09)

**INFORMATION RELATED TO FILING SUIT UNDER THE LAWS ENFORCED BY THE EEOC**

*(This information relates to filing suit in Federal or State court under Federal law. If you also plan to sue claiming violations of State law, please be aware that time limits and other provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS --**

**Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days of the date you *receive* this Notice**. Therefore, you should **keep a record of this date**. Once this 90- day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *mailed* to you** (as indicated where the Notice is signed) or the date of the postmark, if later. Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS -- Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit before 7/1/10 -- *not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice and within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION -- Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do not relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE -- All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request within 6 months of this Notice**. (Before filing suit, any request should be made within the next 90 days.)

***IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.***



| **CHARGE OF DISCRIMINATION**<br>The Privacy Act of 1974 affects this form.<br>See Privacy Act Statement before completing this form. | | EEOC Charge No.<br>32A-2018-00123<br>CCRD Charge No.<br>FE2018235675 |
|---|---|---|
| *COLORADO CIVIL RIGHTS DIVISION AND EEOC* | | |
| Name *(Charging Party)*<br>Raquell Nelli | | (Area Code) Telephone<br>(303) 898-0032 |
| Street Address<br>699 W. 29th Ave , Apt. 3145 | City, State, and Zip Code<br>Denver, CO 80202 | County<br>Denver |
| The Employer, Labor Organization, Employment Agency, Apprenticeship Committee, State or Local Government Agency who discriminated against me is: | | |
| Name *(Respondent)*<br>Frontier Airlines, Inc. | Number of Employees<br>15+ | (Area Code) Telephone<br>(801) 401-9000 |
| Street Address<br>7001 Tower Rd. | City, State, and Zip Code<br>Denver, CO 80249 | County<br>Denver |
| Discrimination Based on:<br>Sex (Female); Retaliation | Date Most Recent Discrimination Occurred<br>November 8, 2017 | |

I. **Jurisdiction:** The Colorado Civil Rights Division has jurisdiction over the subject matter of this charge; that each named Respondent is subject to the jurisdiction of the Colorado Civil Rights Division and is covered by the provisions of the Colorado Revised Statutes (C.R.S. 1973, 24-34-301, et. seq.), as reenacted.

II. **Personal Harm:** On or about October 31, 2017, I was not promoted based on my sex (Female) and/or in retaliation for engaging in protected activity. That on or about November 8, 2017, and prior thereto, I was subjected to adverse terms and conditions of employment based on my sex and/or in retaliation for engaging in protected activity.

III. **Respondent's Position:** Unknown

IV. **Discrimination Statement:** I believe I was discriminated against because of my sex (Female) and/or in retaliation for engaging in protected activity in violation of the Colorado Anti-Discrimination Act (CADA). 1) I began employment with the Respondent on or about April 28, 2016. My most recent job title was Manager of Distribution and Sales. I performed satisfactorily at all times. 2) In or about October of 2017, my supervisor, Tyri Squyres ("Squyres") informed me that the Respondent was hiring a senior manager and the position would be posted soon. I informed Squyres that I was planning on applying and she responded by saying, "We can't stop you from applying." I believed I was qualified for the position. 3) In or about October of 2017, and prior thereto, Squyres would not allow me to go to the manager meetings or conferences when all other managers were able to go. Squyres also precluded me from going to other company sponsored events, but she allowed the males employees to go to these events. Squyres demands that I work on my days off and on weekends, but she does not demand this on my male colleagues. Additionally, my pay increase did not match my male-counterparts, even though my percentage of evaluation was the same as them. 3) On or about November 8, 2017, I complained to the Respondent's HR Manager, Anthony Fabia. No action was taken. 4) On or about November 13, 2017, the Respondent hired an individual, who is not in my protected class, as the new senior manager. 5) I believe I was discriminated against based on my protected class and/or in retaliation for engaging in protected activity.

V. WHEREFORE: The Charging Party prays that the Colorado Civil Rights Division grant such relief as may exist within the Division's power and which the Division may deem necessary and proper.

I want this charge filed with both the Equal Employment Opportunity Commission and the State or local agency, if

COLORADO DIVISION

DEC 04 2017

OF CIVIL RIGHTS

any. I will advise the agency if I change my address or telephone number, and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the foregoing is true and correct.

Date 12/4/2017 Charging Party/Complainant (Signature) Raquell Neill

COLORADO DIVISION

DEC 04 2017

OF CIVIL RIGHTS



| AMENDED CHARGE OF DISCRIMINATION<br>The Privacy Act of 1974 affects this form.<br>See Privacy Act Statement before completing this form. | | EEOC Charge No.<br>32A-2018-00123<br>CCRD Charge No.<br>FE2018235675 |
|---|---|---|
| *COLORADO CIVIL RIGHTS DIVISION AND EEOC* | | |
| Name *(Charging Party)*<br>Raquell Neill | | (Area Code) Telephone<br>(303) 898-0032 |
| Street Address<br>699 W. 29th Ave. Apt. 3145 | City, State, and Zip Code<br>Denver, CO 80202 | County<br>Denver |
| The Employer, Labor Organization, Employment Agency, Apprenticeship Committee, State or Local Government Agency who discriminated against me is: | | |
| Name *(Respondent)*<br>Frontier Airlines, Inc. | Number of Employees<br>15+ | (Area Code) Telephone<br>(801) 401-9000 |
| Street Address<br>7001 Tower Rd. | City, State, and Zip Code<br>Denver, CO 80249 | County<br>Denver |
| Discrimination Based on:<br>Sex (Female); Retaliation | | Date Most Recent Discrimination Occurred<br>November 8, 2017 |

**I. Jurisdiction:** The Colorado Civil Rights Division has jurisdiction over the subject matter of this charge; that each named Respondent is subject to the jurisdiction of the Colorado Civil Rights Division and is covered by the provisions of the Colorado Revised Statutes (C.R.S. 1973, 24-34-301, et. seq.), as reenacted.

**II. Personal Harm:** On or about October 31, 2017, I was not promoted based on my sex (Female) and/or in retaliation for engaging in protected activity. That on or about November 8, 2017, and prior thereto, I was subjected to adverse terms and conditions of employment based on my sex and/or in retaliation for engaging in protected activity. That on or about February 19, 2018, I was discharged based on my protected class and/or in retaliation for engaging in protected activity.

**III. Respondent's Position:** Unknown

**IV. Discrimination Statement:** I believe I was discriminated against because of my sex (Female) and/or in retaliation for engaging in protected activity in violation of the Colorado Anti-Discrimination Act (CADA). 1) I began employment with the Respondent on or about April 28, 2016. My most recent job title was Manager of Distribution and Sales. I performed satisfactorily at all times. 2) In or about October of 2017, my supervisor, Tyri Squyres ("Squyres") informed me that the Respondent was hiring a senior manager and the position would be posted soon. I informed Squyres that I was planning on applying and she responded by saying, "We can't stop you from applying." I believed I was qualified for the position. 3) In or about October of 2017, and prior thereto, Squyres would not allow me to go to the manager meetings or conferences when all other managers were able to go. Squyres also precluded me from going to other company sponsored events, but she allowed the males employees to go to these events. Squyres demands that I work on my days off and on weekends, but she does not demand this on my male colleagues. Additionally, my pay increase did not match my male-counterparts, even though my percentage of evaluation was the same as them. 3) On or about November 8, 2017, I complained to the Respondent's HR Manager, Anthony Fabia. No action was taken. 4) On or about November 13, 2017, the Respondent hired an individual, who is not in my protected class, as the new senior manager. 5) On or about February 19, 2018, I was discharged based on my protected class. 6) I believe I was discriminated against based on my protected class and/or in retaliation for engaging in protected activity.

**V. WHEREFORE:** The Charging Party prays that the Colorado Civil Rights Division grant such relief as may exist within the Division's power and which the Division may deem necessary and proper.

| |
|---|
| I want this charge filed with both the Equal Employment Opportunity Commission and the State or local agency, if any. I will advise the agency if I change my address or telephone number, and I will cooperate fully with them in the processing of my charge in accordance with their procedures. |
| I declare under penalty of perjury that the foregoing is true and correct. Date Charging Party/Complainant (Signature) |



Exhibit B

Exhibit 2

**From:** RYAN CRENNEN <RYAN.CRENNEN@EEOC.GOV>
**Date:** June 1, 2019 at 3:24:10 PM EDT
**To:** Raquell Neill <raquellneill@gmail.com>
**Subject: RE: 32A-2018-0123c**

Dear Ms. Neill,

We have recently concluded our investigation of your charge of discrimination against Frontier Airlines. We have determined that there does not appear to be enough evidence to find, more likely than not, that your employer violated any of the laws we enforce. I does not appear likely that further investigation would change this fact. This does not mean that we support the employer's position or take their side—instead, it means that we do not have enough evidence to prove the contrary. Therefore, the EEOC will be closing its investigation.

In the next few weeks, you will receive a letter informing you of this decision and providing you with "notice of right to sue." Upon receipt of that letter you have 90 days to file a lawsuit in federal court, if you choose to do so.

Sincerely,

Ryan J. Crennen-Dunlap
Investigator
U.S. Equal Employment Opportunity Commission
303 E. 17th Ave, Suite 410
Denver, CO 80203
Phone 303-866-1371
Fax: 303-866-1085
ryan.crennen@eeoc.gov

**From:** Raquell Neill <raquellneill@gmail.com>
**Sent:** Thursday, June 06, 2019 10:39 AM
**To:** RYAN CRENNEN <RYAN.CRENNEN@EEOC.GOV>
**Subject:** Fwd: 32A-2018-00123C

# 32A-2018-00123C

Hi Ryan, number one I want to thank you for all the work you have put in on my behalf.

I am writing to you because I need help understanding how the determination was made especially since there is evidence that Frontier did not allow me to apply for the open position and clearly their intent and purpose, based on the attached and the below, was to hire Will Evans, 60 days prior to the "supposedly" job opening and NOT give me an opportunity to apply.

> Please see attached as Exhibit B, Will Evans' flight itinerary, dated **August 18, 2017,** 60+ days prior to the "posting" of an open position for Senior Manager. Please see the notes within Exhibit B, under the comment section as it clearly states: **CANDIDATE TRAVELING FOR INTERVIEW.**

With that being said, my first question is did they provide proof they actually did post the position with a time stamp? AND was there an explanation provided as to why a full investigation was never preformed after I filed the charge? Especially based on Frontier's written Commitment to Equal Opportunity for Its Employees? And admittedly, they still had not opened a full investigation until the EEOC got involved?

In summary, the EEOC, according to their graph below deemed it necessary to do a further investigation. However, based on the email you sent to me on June 1, 2019, it looks like the EEOC took zero action on my behalf? Help me understand this since Frontier offered me a pretty hefty severance package, trying to get me NOT to involve you based on the facts above. I'm at a loss financially and mentally. Please help me understand the decision. Thank you again for your time. Raquell Neill 303-898-0032


What Happens to Your EEOC Charge




Exhibit B

**From:** RYAN CRENNEN <RYAN.CRENNEN@EEOC.GOV>
**Date:** June 10, 2019 at 1:57:12 PM EDT
**To:** Raquell Neill <raquellneill@gmail.com>
**Subject: RE: 32A-2018-00123C**

Hi Raquell,

We did investigate your charge, and the decision to close the investigation was reached after we determined that further investigation was not likely to result in sufficient evidence to find that Frontier violated any of the laws we enforce. The amount of investigation we conduct varies by case, and we close an investigation once we feel that further investigation would no longer be productive.

While I can't explain the details of the investigation, there does not appear to be sufficient evidence that Frontier actively prevented you from applying to an open position because of your sex or in retaliation for any protected complaint of discrimination. For example, there is evidence that others, including internal candidates, did apply. I am not attempting to argue that Frontier did not discriminate against you in some way—we just have to decide which possibility is most likely based on the available evidence.

You should soon be receiving a letter regarding the dismissal. As noted, that letter contains your right to sue within 90 days of receipt.

Sincerely,
Ryan J. Crennen-Dunlap
Investigator
U.S. Equal Employment Opportunity Commission
303 E. 17th Ave, Suite 410
Denver, CO 80203
Phone 303-866-1371
Fax: 303-866-1085
ryan.crennen@eeoc.gov

Exhibit 3



Littler Mendelson, PC
1900 Sixteenth Street
Suite 800
Denver, CO 80202

Danielle L. Kitson
303.362.2872 direct
303.629.6200 main
303.362.8427 fax
dkitson@littler.com

May 11, 2018

**VIA MAIL AND ELECTRONIC MAIL**

Alba Gonzalez
Investigator
Colorado Civil Rights Division
1560 Broadway, Suite 825
Denver, CO 80202
alba.gonzalez@state.co.us

Re: Case No. FE2018235675
Neill v. Frontier Airlines

Dear Ms. Gonzalez:

I am writing on behalf of Respondent Frontier Airlines, Inc. ("Frontier") in response to the Amended Charge of Discrimination filed by Raquell Neill on March 16, 2018.[1] In her Charge, Ms. Neill alleges to have suffered discrimination based on sex (Female) and suffered retaliation in violation of the Colorado Antidiscrimination Act ("CADA"). As detailed below, there is no merit to Ms. Neill's claims. Accordingly, Frontier requests that the Colorado Civil Rights Division (CCRD) issue a no probable cause finding.

## I. FACTUAL BACKGROUND

### A. Frontier's Commitment to Equal Opportunity for Its Employees

Frontier is an equal opportunity employer and is expressly committed, both by policy and through practice, to providing a workplace for its employees that is free from discrimination

---

[1] The information and supporting documentation contained herein are based upon our understanding of the facts and the information reviewed thus far. Although there has not been an opportunity for formal discovery or a complete formal investigation, this response is submitted for the purpose of aiding the agency in its investigation and facilitating the informal resolution of these matters. This response, while believed to be accurate, does not constitute an affidavit or a binding statement of Frontier's legal position, nor is it intended to be used as evidence of any kind in any administrative or court proceeding in connection with the allegations. Since additional facts likely would be uncovered through discovery or following a full investigation, Frontier in no way waives its right to present new or additional information at a later date, for substance or clarification. Moreover, by responding to this Charge, the Company does not waive, and hereby preserves, any and all substantive and procedural defenses that may exist to the Charge and Charging Party's allegations. Frontier also requests that any efforts to contact its current managers be directed through its counsel.

and harassment. Frontier's handbook makes clear that Frontier is an equal employment opportunity employer and will not discriminate on the basis of race, sex, national origin, or age, among other prohibited traits. *See* attached Handbook, Exhibit A. Frontier's handbook encourages all employees to report any unfair treatment to Human Resources and provides a policy instructing how to do so.

B. **Ms. Neill's employment with Frontier**

Frontier hired Ms. Neill as a Distribution Manager on April 25, 2016. In that capacity, her duties were to manage the company's third party distribution solutions to maintain or lower distributions costs, make the current distribution channels more efficient and develop new associated revenue streams to increase sales and achieve corporate objectives.

On October 17, 2017, Frontier posted an open position for Senior Manager, Distribution and Sales, which would have been a position senior to Ms. Neill's, with different responsibilities. Ms. Neill asked her supervisor about the posting, but never applied to the position. Having gone through the hiring process with Frontier in the past, and having acknowledged its hiring policies upon starting in 2016, Ms. Neill should have been well aware that internal candidates needed to *apply* to a position in order to be considered for it. *See* attached Ex. A.

Frontier followed all of its recruiting and hiring procedures when posting and interviewing for the Senior Manager position. Ultimately, on October 26, 2017, it offered the position to candidate William Evans, who then started on November 13, 2017.[2]

On November 8, 2017, Anthony Sabia, Frontier Director of HR Services, received a voicemail from Ms. Neill, attached herein as an audio file, Exhibit B. A transcript of the voicemail is as follows:

> "Hey Anthony, this is Raquell Neill. Um, anyways, I was supposed to go to a conference today but I just am stressing really bad lately and I was on the plane and I had a panic attack so I had to get off the flight. Um, if you can set up a time for me and you to talk tomorrow that would be great, I will be in the office since I'm not going to go to this conference after all. Um, thank you, bye."

Mr. Sabia did not interpret this voicemail to be a complaint relating to any form of discrimination. He followed up with Ms. Neill by phone and in person following the voicemail. At no time during her employment with Frontier did Ms. Neill allege any discrimination or make any discrimination complaint to Mr. Sabia, or any other Frontier management personnel.[3]

---

[2] Ms. Neill was never considered for the position because she failed to apply for it. However, even if she had applied for the position, she was far less qualified for the Senior Manager position than Mr. Evans, both in prior experience and education (for example, the position required a bachelor's degree, which Ms. Neill did not have).

[3] Frontier first learned of any complaint of discrimination through Ms. Neill's CCRD charge, which it received on or about December 27, 2017.

In late 2016 into 2017, Frontier began planning a restructure of its Commercial Organization department for the 2018 fiscal year, which adjusted positions and funding in several departments. The goal of these adjustments was to optimize headcount with more senior leadership. As part of that restructure, Ms. Neill's Distribution Manager position was eliminated to assist the strategic company goal of funding more senior leadership positions. The decision to eliminate the position was made well before Ms. Neill purported engaged in any alleged protected activity, having been finalized in September 2017.

II. **Legal Discussion**

A. **Ms. Neill's Sex Discrimination Claim Fails.**

In a Title VII claim for sex discrimination, in the absence of any direct evidence of either form of discrimination, the burden-shifting framework established by *McDonnell Douglas Corp. v. Green* , 411 U.S. 792 (1973) applies. *See, e.g., Colo. Civil Rights Comm'n v. Big O Tires*, 940 P.2d 397, 400 (Colo. 1997) (adopting the Supreme Court's analysis set forth in *McDonnell Douglas* and its progeny for a claim brought under section 24-34-402, C.R.S.). Because the language of the Colorado Anti-Discrimination Act ("CADA") parallels its federal counterpart, Title VII of the Civil Rights Act of 1964, Colorado courts "look to federal cases for guidance on applying the Colorado Statute." *St. Croix v. Univ. of Colo. Health Scis., Ctr.*, 166 P.3d 230, 236 (Colo. App. 2007) (*citing Big O Tires*, 940 P.2d at 399).

Under the *McDonnell-Douglas* burden-shifting analysis, Ms. Neill must first establish a prima facie case of discrimination. *See, e.g., Big O Tires*, 940 P.2d at 400. Even if Ms. Neill meets this initial burden, Frontier may then articulate some legitimate, nondiscriminatory reason for the employment decision. *Plotke v. White* , 405 F.3d 1092, 1099 (10th Cir. 2005). This burden of production is "exceedingly light." *Sprague v. Thorn Ams., Inc.*, 129 F.3d 1355, 1363 (10th Cir. 1997). The burden then shifts back to Ms. Neill, who must then "demonstrate by competent evidence that the presumptively valid reasons for the employment decision were in fact a pretext for discrimination." *Id.*

For discrimination based on sex, Ms. Neill must first show that: (1) she is a member of a protected class; (2) she was meeting Frontier's legitimate job performance expectations; (3) she suffered an adverse employment action; and (4) Frontier treated similarly situated individuals more favorably. *Big O Tires*, 940 P.2d at 400.

1. **Ms. Neill Did Not Apply for a Promotion.**

Frontier had a legitimate, non-discriminatory reason for not promoting Ms. Neill: Ms. Neill never applied for the position she claims Frontier failed to place her in. Therefore, because it had no knowledge of Ms. Neill's apparent desire to be promoted, it did not promote her. What's more, the qualifications of the position and the person chosen for the position are vastly different than Ms. Neill's qualifications.

Frontier eliminated Ms. Neill's position four months after it posted the position she claims it failed to promote her to. It did so because of budgetary cuts decided in September 2017. The discharge was in no way related to Ms. Neill's sex.

**2. The only adverse action alleged by Ms. Neill was her discharge**

An adverse employment action requires "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Annett v. Univ. of Kan.*, 371 F.3d 1233, 1237 (10th Cir. 2004). A "mere inconvenience" is not an adverse employment action. *Sanchez v. Denver Pub. Sch.*, 164 F.3d 527, 532 (10th Cir. 1998). "[N]ot everything that makes an employee unhappy is . . . actionable." *Robinson v. Cavalry Portfolio Servs., LLC*, 365 F. App'x 104 (10th Cir. 2010) (unpublished). Otherwise, "minor and even trivial employment actions . . . would form the basis of a discrimination suit." Anderson v. Clovis Mun. Sch. , 265 F. App'x 699 (10th Cir. 2008) (unpublished).

Other than the fact of her discharge, Ms. Neill alleges no facts that amount to adverse actions. On the contrary, she was never disciplined in any way, and there were no significant changes in her employment status until the discharge.

Ms. Neill claims that because she was excluded from meetings and trainings, was subjected to adverse actions. However these allegations do not amount to significant changes in employment status. For example, In *West v. Norton*, 376 F.Supp.2d 1105 (D. N. Mex. Nov. 1, 2004), the Court declined to find that "travel restrictions, limitations on her attending meetings, and prohibiting her from attending a training course" materially altered the terms and conditions of the plaintiff's employment such that these actions were materially adverse. *West v. Norton*, 376 F.Supp.2d 1105 (D. N. Mex. Nov. 1, 2004) (analyzing under the even broader definition of adverse action in retaliation claims). Similarly, in *Otero*, there was no adverse action where "[d]efendants have denied his request to attend annual meetings of the Interstate Compact Commission and have failed to notify him of unspecified training opportunities." *Otero v. New Mexico Corrections Dept.*, 640 F.Supp.2d 1346, 1356 (D. N. Mex. June 9, 2009).

Ms. Neill also claims that because she was asked to work on the weekend, she was subjected to an adverse action. Not so. Ms. Neill was a salaried employee for Frontier, and responsible for completing the duties of her position without regard for specific hours. Indeed, Ms. Neill often took advantage of the flexibility of her position's schedule by working from home or leaving the office during the work day because she had to "go to the bank" or "had a package delivery." The fact that Ms. Neill had to complete her required duties outside of a typical Monday – Friday timeframe is not an adverse action. *See Arnold v. City of Denver*, No. 14–cv–00290–REB–CBS, 2015 WL 333056, *8 (D.Colo. Jan. 23, 2015) (*citing Brown v. Georgetown Univ. Hospital Medstar Health*, 828 F.Supp.2d 1, 8 (D.D.C.2011).

Finally, Ms. Neil claims that her pay raise "did not match my male-counterparts [sic], even though my percentage of evaluation was the same as them." Ms. Neil provides no facts to support her allegation, such as the timing of her pay raise, what her pay raise consisted of,

what her "male-counterparts'" pay raise consisted of, or what anyone's "percentage of evaluation" was. Ms. Neill has not shown a prima facie claim of discrimination.

B. **Frontier had legitimate, non-discriminatory reasons.**

As noted, Frontier eliminated the Distribution Manager position to assist in funding the company strategic goals. Specifically, Ms. Neill's salary of approximately $85,000 was placed back into the budget to assist in funding a new leadership organization, which required fewer personnel and higher salaries. The overall justification for the senior leadership structure, instead of the manager and director positions that were eliminated was to drive revenue and improve customer experience.

C. **Ms. Neill cannot establish pretext.**

A sufficient showing of pretext requires Ms. Neill to demonstrate that "each of [Frontier's] proffered reasons" is "unworthy of belief." *Freppon v. City of Chandler*, 528 F. App'x 892, 903 (10th Cir. 2013) (unpublished) (affirming summary judgment on pregnancy discrimination claim); *Borwick*, 2013 WL 229497, at *8 (granting motion for summary judgment on pregnancy discrimination claim). Frontier's non-discriminatory explanations for its actions must be "so incoherent, weak, inconsistent, or contradictory that a rational factfinder could conclude [they are] unworthy of belief." *See E.E.O.C. v. C.R. England, Inc.*, 644 F.3d 1028, 1037 (10th Cir. 2011); *Griego v. Barton Leasing, Inc.*, No. 08-cv-02325-LTB-BNB, 2010 WL 618281, at *4 (D. Colo. Feb. 19, 2010) (same). "[T]emporal proximity alone is insufficient to establish pretext." *Colaizzi*, 2017 WL 878539, at *3–5.

Ms. Neill has not addressed Frontier's reasons for her discharge. Further, although she claims that "male colleagues" were treated differently than her, she fails to allege any specific facts about who these male colleagues were or how they were similarly situated to Ms. Neill. Ms. Neill's inability to show that any similarly situated employee was treated differently conclusively precludes her from establishing pretext. *See Crowe v. ADT Sec. Servs., Inc.*, 649 F.3d 1189, 1196–97 (10th Cir. 2011) (concluding that plaintiff failed to support a finding of pretext when he produced no evidence that similarly situated employees were treated differently). Ms. Neill's Charge should be dismissed for these additional reasons.

D. **Ms. Neill's Retaliation Claim Fails.**

To establish a prima facie case of retaliation, Ms. Neill must produce evidence to prove that: (1) she engaged in protected activity; (2) she suffered from an adverse employment action; and (3) there is a causal connection between the two. *See Morgan v. Hilti*, 108 F.3d 1319, 1325 (10th Cir. 1997); *accord Fye v. Okla. Corp. Comm'n*, 516 F.3d 1217, 1227 (10th Cir. 2008); *Borwick*, 2013 WL 229497, at *12; *Falk*, 2012 WL 2390556, at *5.

As noted, Ms. Neill's "complaint" on November 8, 2017 was audio recorded, and was clearly not implicating discrimination. Protected activity does not include complaints that "do[] not implicate race, sex, or other unlawful discrimination." *Robinson v. Dean Foods Co.*, 654 F. Supp. 2d 1268, 1283 (D. Colo. 2009) ("[A]n employee's complaints regarding unfair treatment,

no matter how unconscionable, cannot be 'protected opposition to discrimination' unless the basis for the alleged unfair treatment is some form of unlawful discrimination."); *Hinds v. Sprint/United Mgmt. Co.*, 523 F.3d 1187, 1202-03 (10th Cir. 2008) (holding that "[g]eneral complaints about company management . . . will not suffice"); *accord Zokari v. Gates*, 561 F.3d 1076, 1081-82 (10th Cir. 2009).

She also cannot demonstrate causation. *See, e.g., Univ. of Texas Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2534 (2013) (holding that a retaliation plaintiff "must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer"). Frontier made the decision to eliminate the Distribution Manager's position in September, two months before Ms. Neill filed her charge in this case. Therefore, Ms. Neill cannot show that any subsequent protected activity was the reason for her termination. Indeed, "[e]mployers need not suspend previously planned [employment actions] upon discovering that a Title VII suit has been filed, and their proceeding along lines previously contemplated, though not yet definitively determined, is no evidence whatever of causality." *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 272 (2001) Ms. Neill was discharged due to budgetary reorganization that was decided in September 2017 (and implemented in 2018). Ms. Neil's retaliation claim should be dismissed for these additional reasons.

E. ***Faragher Ellerth* Defense**

Ms. Neill has not alleged harassment or hostile work environment, but to the extent her charge in construed to allege harassment, the *Faragher/Ellerth* affirmative defense bars such a claim. The *Faragher/Ellerth* affirmative defense provides that a claim for relief for harassment by an employee is barred if Frontier provides proof by a preponderance of the evidence that (1) the employer exercised reasonable care to prevent and promptly correct any harassing behavior, and (2) that the employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer or to avoid harm otherwise. *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998); *Burlington Indus. v. Ellerth*, 524 U.S. 742 (1998). Here, even assuming for argument's sake that Ms. Neill experienced actionable harassment based upon race, which Frontier disputes for the reasons explained above, her claim is barred as a matter of law because Frontier can prove both elements of this affirmative defense. Indeed, Ms. Neill did not allege anything relating to national origin until well after she had left Frontier.

III. Conclusion

For all of these reasons, Ms. Neill cannot sustain her discrimination or retaliation claims. The CCRD should issue a finding of no reasonable cause.

Please do not hesitate to contact me should you have any questions or need any additional information in resolving this matter.

Very truly yours,

s/ Danielle L. Kitson

*s/ Danielle L. Kitson*
Danielle L. Kitson

DLK/SEB

Attachments

May 31, 2018

**VIA ELECTRONIC MAIL**

Alba Gonzalez
Investigator
Colorado Civil Rights Division
1560 Broadway, Suite 825
Denver, CO 80202

Re: Case No. FE2018235675
Neill v. Frontier Airlines

Dear Ms. Gonzalez:

I, Raquell Neill, Petitioner, am submitting this written rebuttal in response to Frontier Airlines response, dated May 11, 2018 to the Charge of Discrimination. Below is the rebuttal argument following the numbered steps within the response as follows:

I. FACTUAL BACKGROUND

A. Frontier's Commitment to Equal Opportunity for Its Employees.

Petitioner's response: As charged, Frontier is NOT an equal opportunity employer and is NOT expressly committed, both by policy and through **practice,** to providing a workplace for its employee that is free from discrimination. Clearly, as you will see via the attachments and argument below, Frontier Airlines did not provide that kind of environment.

Petitioner also questions Frontier's response regarding discovery and a full investigation as they portray a formal investigation has not yet been done on their part. If Frontier truly "practiced" providing a workplace free of discrimination, why hasn't a full investigation been done? This alone speaks volumes regarding Frontier Airlines character in this matter.

I. FACTUAL BACKGROUND

B. Ms. Neill's employment with Frontier

Frontier hired Ms. Neill as a Distribution Manager on April 25, 2016. In that capacity, duties were to manage the company's third party, distribution solutions. I negotiated contracts with third parties and improved distribution channels and developed new revenue with 3rd parties.

However, Frontier is stating they posted an open position for Senior Manager, Distribution and Sales, on October 17, 2017 which would have been a position senior to Ms. Neill's position at Frontier. And an opportunity of promotion for Petitioner. However, Ms. Neill and her co-worker looked daily for the

position to post, and never saw anything. In fact, nothing was ever posted and when asked HR could not prove that it was posted nor, could they produce a history of the posting within the system.

Within the response to the Colorado Civil Rights Division dated May 11, 2018, Frontier acknowledged that "Ms. Neill asked her supervisor about the posting"

In fact, Petitioner did ask her VP, Tyri Sqyres about the opening as she was pulled into a meeting on the 28 Sep. and was advised by Tyri Sqyres that Frontier Airlines would be hiring sometime in 2018. Petitioner then explained to Tyri Sqyres she was interested in the position and would be applying. Tyri Sqyres response "I can't stop you" which was inappropriate. This certainly does not reflect the best "practice" in the work place. Even if Petitioner did not apply within the allotted time given to internal candidates, the FACT that Frontier is acknowledging that Petitioner inquired about the position to her superior, indicates no flexibility on VP Tyri Sqyres part.

Further, as part of Exhibit A, (attached) within Frontier's handbook it clearly states:

"Failure to submit this form by the "close date" indicated on the internal job posting <u>may</u> disqualify you from consideration."

And then again states: *Any exceptions to the above guidelines must have department Vice President and HR Vice President approval.

Clearly, Frontier is acknowledging Ms. Neill (Petitioner), inquired about the position but was not given an exception to apply. Frontier Airlines states it followed "all" of its recruiting and hiring procedures when posting and interviewing for the Senior Manager position, but Petitioner takes issue with that statement because she was not offered an exception even though she inquired about the position and Frontier Airlines is acknowledging that Petitioner did so.

In addition, based on the following evidence, Petitioner takes issue with Frontier Airlines commitment to equal opportunity for its employees based on how it handled the recruiting and hiring procedures for the Senior Manager position:

Please see attached as Exhibit B, Will Evans' flight itinerary, dated **August 18, 2017,** 60+ days prior to the "posting" of an open position for Senior Manager. Please see the notes within Exhibit B, under the comment section as it clearly states: **CANDIDATE TRAVELING FOR INTERVIEW.**

Frontier Airlines also acknowledges Petitioner did have conversations and meetings with Mr. Anthony Sabia, Frontier Airlines, Director of HR Services. However, Frontier claims Petitioner made no form of a discrimination complaint. This basically comes down to his word against hers, however, Frontier Airlines acknowledges there were meetings with Petitioner.

I. B (2) States "Even if she had applied for the position, she was far less qualified." This too, without providing a comparable analysis of experience and skills, is insulting.

On page 3 of the response, Frontier Airlines claims it began planning a restructure of its commercial organization in late 2016 into 2017 for the 2018 fiscal year. This too causes suspicion as Petitioner was not discharged (or as Frontier Airlines claims, job eliminated) until March 2, 2018. The scope of this explanation does not add up. Most often, when an organization finishes its re-org the positions are eliminated or done within a range of 6 weeks, if not immediately. Specifically, on page 4 Frontier Airlines states the budgetary cuts were decided upon in September 2017, however, Frontier Airlines, secretly interviewed Will Evans in August. Leaving Petitioner and the team blind-sided as the employee handbook was not followed.

II. Legal Discussion

Petitioner has established a prima facie case of discrimination:

- She is over 40 and a female. Eric Engel, Ms. Neill's peer at Frontier Airlines is still at his position, as Manager of Sales and Distribution.
- Petitioner, (Ms. Neill), was qualified for the position. In your letter dated May 11, 2018, Frontier Airlines states "she was never disciplined in any way, and there were no significant changes in her employment status until the discharge".
- If this response stopped here, Petitioner has proven there was adverse actions taken against her regarding her position at Frontier Airlines. However, and in addition, Ms. Neill (Petitioner), complained to Directors, VP's and William Evans of how Tommy Laughenson would continually shoot her daily with a nerf gun. Ms. Neill asked him several times to stop. It continued, and all the male co-workers would laugh. Nothing was done to stop him. If needed there are witnesses within the department that witnessed the bruising it caused and the people hearing Petitioner telling him to stop.
- Further, Petitioner could, if necessary, subpoena or depose other co-workers who witnessed not only this behavior but also the behavior of Tyri Sqyres during a meeting about the "implied" organization meeting. Especially when Petitioner candidly asked Tyri Sqyres about the hiring of Will Evans within the meeting, and Tyri Sqyres denied the hiring of Mr. William Evans, (or in other words lied).
- Another example is the Google contract. After Petitioner had it successfully signed, Tyri Sqyres came to Petitioner's desk and advised she is giving Doug Bertman the account to handle now. Without any explanation as to why. It should be noted here that the successfully signed contract, administered by Petitioner, gave Frontier Airlines several advantages in the market, which equated to monetary value. Tyri Sqyres used the contract to get Doug Bertman promoted. Wrong on so many levels, however, Petitioner is alleging it was because of her female status.
- Regarding the October 17, 2018 job posting. Petitioner, on November 9, 2017, sent an email to HR asking when the position was posted. No response was received and on November 13, 2017, Petitioner asked for a follow-up. Anthony Silva, HR Manager was unable to produce the proof of the posting. Petitioner also followed-up and asked for the history of the posting and HR could not provide. Again, Petitioner did have conversations with HR, however, Frontier Airlines response

of May 11, 2018 doesn't include those inquiries. Petitioner is alleging Frontier is hiding the history and details of the job posting. When asked to have Frontier Airlines produce it, she was ignored.

Under II. Legal Discussion A. 2. (page 4 of Frontier Airlines response)

Frontier Airlines response that **the only adverse action alleged by Ms. Neill was her discharge**

Implying Petitioner only experienced a "mere inconvenience" and not an adverse employment action. Clearly, the discharge that Petitioner amended to the filing of discrimination against Frontier Airlines with the Colorado Civil Rights Division was due to the Petitioner filing that very charge on December 4, 2017. As detailed above it was not a "mere inconvenience" but a very real and evident attack on her personhood and character.

In addition, prior to and especially after the Petitioner's December 4, 2017 filing she experienced being denied training, managers meetings and travel which were all part of her job responsibilities with only an explanation of "it is not part of the scope of your duties" however, past practice shows, all were part of her duties. And, her male counter-parts were invited, trained and allowed to travel. Further, nothing was said to her that her position was being eliminated or that ANY positions were being eliminated. On the contrary the department was told all positions were safe. Again, the action alleged by Ms. Neill was not only her discharge. Petitioner received heavy retaliation from Ms. Sqyres after the December 4, 2017 filing which excluded her from participating in discussions, training, traveling and meetings until finally the discharge. And on March 16, 2018 (attached as exhibit C) an amendment to the original EEOC filing of discrimination was filed to include the discharge.

It should be noted here as well that Frontier Airlines, clearly states Petitioner's job was eliminated, however, part of the retaliation included being treated like she was fired, not laid off. Petitioner was walked off the premises and was not allowed to return to her desk to collect her belongings. When she requested to collect the items, she was told they'd be sent to her. When the items arrived, they were carelessly packaged, and most were broken or damaged.

Please also see, February 19, 2018, attached as Exhibit D, it shows Frontier Airlines attempt to basically bribe Petitioner with 12 weeks of her current base salary along with health insurance coverage through 31March18, <u>in exchange</u> for Petitioners release of all employment claims. When Petitioner did not accept these terms, another attempt of was made by Frontier Airlines that "up the stakes", including 20 weeks of severance pay and health coverage through July 31, 2018. (Attached as an Exhibit E, March 5, 2018). It should be noted here these offers are significant for an employee who has only been employed 2 years. One must ask themselves, is this behavior in the employee handbook? Was it a "nicety" attempt, a policy or an admission?

CONCLUSION

Petitioner has shown the pretext required and has demonstrated herein Frontier Airlines is unworthy of belief.

For the reasons and evidence listed, Petitioner has sustained her discrimination and retaliation claims.

Again, it is concerning and telling regarding Frontier's statement within their response dated May 11, 2018, "that a formal investigation has not been done on their part." If indeed Frontier Airlines provides a workplace free of discrimination, why wasn't a full investigation already completed?

WHEREFORE: The Charging Party prays that the Colorado Civil Rights Division grant such relief as may exist within the Division's power and which the Division may deem necessary and proper.

Sincerely,

*Raquell Neill*

Raquell Neill

/attachments

Exhibit 4

**From:** Raquell Neill <raquellneill@gmail.com>
**Date:** July 8, 2018 at 9:58:19 PM EDT
**To:** "Gonzalez - DORA, Alba" <alba.gonzalez@state.co.us>
**Subject: Re: Per our conversation this morning. Neill vs Frontier**

Alba,

Please see the following, and let me know if you have any questions.

Thanks

July 8, 2018

**VIA ELECTRONIC MAIL**

Alba Gonzalez
Investigator
Colorado Civil Rights Division
1560 Broadway, Suite 825
Denver, CO 80202

Re: Case No. FE2018235675
Neill v. Frontier Airlines

Dear Ms. Gonzalez:

I am writing to you in response to your correspondence to me, dated July 6, 2018.

I, Raquell Neill, Petitioner, did express interest as Frontier Airlines, (Respondent), has acknowledged within their response. However, Petitioner not only expressed interest to Tyri Sqyres, VP of Marketing, but to HR as well. As stated in Petitioner's rebuttal, Respondent did acknowledge that Petitioner did have conversations and meetings with Mr. Anthony Sabia, Frontier Airlines, Director of HR Services. However, Respondent is now denying Petitioner made any mention of foul play or discrimination. Again, this comes down to "his word against hers," however, Respondent is acknowledging that meetings were held between Petitioner and the HR Department.

Petitioner is crying foul for two reasons 1) Respondent claims they posted the position for the Senior Manager position, however, Petitioner has yet to see any proof of this, but requested the proof and history several times from Respondent, even while still employed at Frontier Airlines, but it never was produced. 2) Respondent and a co-worker, (we will leave off the co-worker's name for protection purposes), were told that Frontier Airlines would be hiring a Senior Manager position. After letting us know, we both scaled the potential openings at Frontier Airlines daily AND SAW NOTHING. Petitioner and her co-worker found out they hired William Evans from other distribution organizations within the industry and not from Frontier. However, when Tyri Sqyres was confronted about it in a team meeting, Tyri Sqyres denied it.

Petitioner was hired in **April 2016** as the Distribution Manager, that was within the Sales and Distribution organization under Michael Pewter, Director of Sales and Distribution, and Michael Pewter answered to Tyri Sqyres. It should be noted here that Michael Pewter was reassigned to a new position within the Inflight Organization (completely different department), at Frontier Airlines in **November 2016**, and Petitioner ran the Sales and Distribution department for over a year without a Director or Senior Manager above her and answered directly to Tyri Sqyres, VP of Marketing, hence overseeing the Director's role for over a year. For this reason and many others, Petitioner was qualified for the Senior Manager position. However, even though she expressed interest to apply for the position - was not given the opportunity to apply because it was never posted.

Again, prior to being "let go" Petitioner asked Respondent for a copy of the posting for Senior Manager position and it was never provided. In this very technological world, Respondent could probably produce a type of 'dummy' posting to show to the investigator, Ms. Gonzalez. However, Petitioner requested (and still is requesting), to see not only the posting of this position, but also the history of the posting of this position.

Again, Petitioner is alleging Frontier is hiding the history and details of the job posting. Petitioner did ask Frontier Airlines to produce it prior to her discharge however, she was ignored.

In Response to your inquiry about William Evan's flight itinerary, dated August 18, 2017, Petitioner is not stating that William Evan's was hired on or about August 18, 2017. Petitioner was only pointing out and still takes issue with Respondent's "so called" commitment to equal opportunity for its employees based on how it handled the recruiting and hiring procedures for the Senior Manager position. If Respondent now states they interviewed Will Evan's for another position, back in August, Petitioner has not seen this in any of their responses, nor has the Respondent provided any documentation regarding another position. At best, Petitioner would expect proof that Respondent brought Williams Evans in, in August to interview for a different position with documentation and history and then proof again that Williams Evans interviewed for the Senior Manager position after the "alleged" October 17, 2017 posting. Frontier never brought him back in to interview for the Senior Manager position, that was "supposedly" posted in October, however, interviewed him in August. This simply screams of a shady process. Especially since proof was denied and never provided since this charge was filed.

In addition, Petitioner continues to question Frontier's "commitment to equal opportunity for its employees" based on Respondent's response regarding a full investigation. As Respondent, within their response, stated a formal investigation has not yet been done on their part. If Frontier truly "practiced" providing a workplace free of discrimination, why wasn't a full investigation done in December, when Petitioner filed the complaint? This alone speaks volumes regarding Frontier Airlines character in this matter.

Petitioner cannot help but feel that because she held Respondent accountable to their "commitment to equal opportunity for its employees," by filing the charge of discrimination, she also then became a victim of retaliation by the organization and lost her job.

WHEREFORE: The Charging Party prays that the Colorado Civil Rights Division grant such relief as may exist within the Division's power and which the Division may deem necessary and proper.

Sincerely,

*Raquell Neill*

Raquell Neill
303-898-0032

On Fri, Jul 6, 2018 at 1:51 PM, Gonzalez - DORA, Alba <alba.gonzalez@state.co.us> wrote:
Also, can you help me understand how the Flight Itinerary approval for Evans demonstrates that he was hired on August 18, 2017. This is unclear in your rebuttal. Thank you.

**Respectfully,**

**Alba Gonzalez**
**Investigator**
Colorado Civil Rights Division
P 303.894.7406 | F 303.894.7830
1560 Broadway, Suite 825 Denver, CO 80202
alba.gonzalez@state.co.us | www.dora.colorado.gov/crd

On Fri, Jul 6, 2018 at 12:33 PM, Gonzalez - DORA, Alba <alba.gonzalez@state.co.us> wrote:
Ms. Neill,

I recognize that the Respondent acknowledges that you expressed an interest in the Senior Manager position, however, the Respondent is alleging that despite your expressed interest, you did not apply for the position. The Respondent alleges that it posted the Senior Manager position competitively on or about October 17, 2017. Therefore, if you have any additional supporting evidence that contradicts the Respondent's assertion, please provide it to me by no later than July 10, 2018.

Thanks

**Respectfully,**

**Alba Gonzalez**
**Investigator**
Colorado Civil Rights Division
P 303.894.7406 | F 303.894.7830
1560 Broadway, Suite 825 Denver, CO 80202
alba.gonzalez@state.co.us | www.dora.colorado.gov/crd

On Mon, Jun 18, 2018 at 12:40 PM, Raquell Neill <raquellneill@gmail.com> wrote:

Help me understand where Frontier is saying I did not inquire about the position? When in fact they

even acknowledged it in their response dated May 11, 2018. See below (underlined and highlighted in yellow):

On October 17, 2017, Frontier posted an open position for Senior Manager, Distribution and Sales, which would have been a position senior to Ms. Neill's, with different responsibilities. Ms. Neill asked her supervisor about the posting, but never applied to the position. Having gone through the hiring process with Frontier in the past, and having acknowledged its hiring policies upon starting in 2016, Ms. Neill should have been well aware that internal candidates needed to apply to a position in order to be considered for it.

Please also see the following (in bold) within my response dated May 31, 2018

**Within the response to the Colorado Civil Rights Division dated May 11, 2018, Frontier acknowledged that "Ms. Neill asked her supervisor about the posting".**

**In fact, Petitioner did ask her VP, Tyri Sqyres about the opening as she was pulled into a meeting on the 28 Sep. and was advised by Tyri Sqyres that Frontier Airlines would be hiring sometime in 2018. Petitioner then explained to Tyri Sqyres she was interested in the position and would be applying. Tyri Sqyres response "I can't stop you" which was inappropriate. This certainly does not reflect the best "practice" in the work place. Even if Petitioner did not apply within the allotted time given to internal candidates, the FACT that Frontier is acknowledging that Petitioner inquired about the position to her superior, indicates no flexibility on VP Tyri Sqyres part.**

**Further, as part of Exhibit A, (attached) within Frontier's handbook it clearly states:**

**"Failure to submit this form by the "close date" indicated on the internal job posting <u>may</u> disqualify you from consideration."**

**And then again states: *Any exceptions to the above guidelines must have department Vice President and HR Vice President approval.**

**Clearly, Frontier is acknowledging Ms. Neill (Petitioner), inquired about the position but was not given an exception to apply. Frontier Airlines states it followed "all" of its recruiting and hiring procedures when posting and interviewing for the Senior Manager position, but Petitioner takes issue with that statement because she was not offered an exception even though she inquired about the position and Frontier Airlines is acknowledging that Petitioner did so.**

**In addition, based on the following evidence, Petitioner takes issue with Frontier Airlines commitment to equal opportunity for its employees based on how it handled the recruiting and hiring procedures for the Senior Manager position:**

**Please see attached as Exhibit B, Will Evans' flight itinerary, dated August 18, 2017, 60+ days prior to the "posting" of an open position for Senior Manager. Please see the notes within Exhibit B, under the comment section as it clearly states: CANDIDATE TRAVELING FOR INTERVIEW.**

**Frontier Airlines also acknowledges Petitioner did have conversations and meetings with Mr. Anthony Sabia, Frontier Airlines, Director of HR Services. However, Frontier claims Petitioner made no form of a discrimination complaint. This basically comes down to his word against hers, however, Frontier Airlines acknowledges there were meetings with Petitioner.**

Ms. Gonzalez, even if I did miss the posting, (which I am contesting whether or not the posting ever happened) but, nevertheless, in their handbook, as I pointed out in my response, Frontier <u>does</u> have an exception policy that allows you to apply. It is stated within their handbook. In addition, there should have been an exception made since I inquired about it not once but twice to Tyre Sqyres, once to her, and once in a meeting she held with several other people present on or about September 28. AND during the meetings and conversations I had with HR. Frontier also is acknowledging there were meetings between myself and HR.

I'm so struggling with Frontier denying I inquired. It's just not true. In addition, it is clear they were interviewing in AUGUST before the posting was ever posted in OCTOBER, <u>as they claim</u>.

Again, thank you for your time,

Raquell Neill

EXHIBIT D

**FRONTIER**

LEGAL RELEASE

This Employment Separation & Legal Release Agreement ("the Legal Release") is between Rachael Nash ("Employee") and Frontier Airlines, Inc., its parent, subsidiaries, affiliates, and predecessors, and their respective officers, directors, employees, agents, representatives and insurers (collectively the "Company").

WHEREAS, the Company has eliminated Employee's current position of Sales and Distribution Manager, resulting in Employee's termination of employment effective March 2, 2018;

WHEREAS, on December 4, 2017, Employee filed a charge of discrimination against the Company with the U.S. Equal Employment Opportunity Commission ("EEOC") and the Colorado Civil Rights Division ("CCRD") alleging that the Company discriminated against Charging Party based upon her sex (female) and in retaliation for engaging in a protected activity (EEOC Charge No. 32A-2018-00123 and CCRD Charge No. FF2018235675) (collectively, the "Charge");

WHEREAS, the Parties now desire to effect between themselves a full, complete and final settlement and release of any and all claims and other differences that do, could or may hereafter exist between them, including without limitation, any and all claims and causes of action relating to Employee's employment with the Company, and including but not limited to the claims asserted by Employee in the Charge...

1) Separation Benefits. Employee's employment with the Company will be separated effective March 2, 2018. In exchange for the execution and delivery of this Legal Release, the Company will provide Employee with the following consideration (the "Benefits"):

a. A severance payment of $18,972.72 will be payable to you in accordance with the Company's regular payroll cycles, and the payment shall be subject to all applicable tax withholding.

b. Employee acknowledges that the consideration set forth in this subsection is in addition to and over and above any amounts or benefits due to Employee under the Company's policies or practices. Employee further acknowledges that Employee is receiving valuable consideration under this Legal Release to which Employee would not otherwise be entitled.

c. The Company will make the payments referred to in Section 'a' above beginning the first regular payroll pay date after the Effective Date, as defined below. Employee acknowledges that the Company is obligated to and will withhold appropriate taxes from all payments paid by Company to the Employee pursuant to this Legal Release.

2) Withdrawal of EEOC Charge. In consideration of the Benefits described in Section 1 above, Employee agrees to withdraw the Charge within seven (7) days of the Effective Date. However, nothing in this Legal Release prevents Employee from participating in any investigation or proceeding conducted by the EEOC or CCRD with respect to the Charge. Further, nothing in th[illegible] egal Release is intended to waive claims (i) for unemployment or workers' compens[illegible] enefits, (ii) for vested rights under ERISA-covered employee benefit plans as applicable [illegible] te Employee signs this Legal Release, (iii) that may arise after Employee signs th[illegible] lease, (iv) for reimbursement of expenses under the Company's expense reim[illegible]

ER.COM

FRONTIER

policies, or (v) which cannot be released by private agreement. In addition, nothing in this Legal Release limits or affects Employee's right to challenge the validity of this Legal Release under the ADEA or the OWBPA; prevents Employee from filing a charge or complaint with, or from participating in an investigation or proceeding conducted by the EEOC, the CCRD, the National Labor Relations Board, the Securities and Exchange Commission, or any other any federal, state or local agency charged with the enforcement of any laws, including providing documents or any other information. Further, nothing in this Legal Release limits Employee from exercising rights under Section 7 of the NLRA to engage in protected, concerted activity with other employees. However, by signing this Legal Release, Employee is waiving rights to individual relief (including backpay, frontpay, reinstatement or other legal or equitable relief) in any charge, complaint, or lawsuit or other proceeding brought by Employee or on Employee's behalf by any third party, except for any right Employee may have to receive a payment or award from a government agency (and not the Company) for information provided to the government agency or otherwise where prohibited.

3). Release. In consideration of the Benefits described in Section 1 above, Employee further agrees to the following release terms:

(a) On behalf of myself, my agents, assignees, attorneys, heirs, executors and administrators, I hereby release the Company and its predecessors, successors and assigns, their current and former parents, affiliates, subsidiaries, divisions and joint ventures (collectively, the "Company Group") and all of their current and former officers, directors, employees, and agents, in their capacity as Company Group representatives (individually and collectively, "Releasees") from any and all controversies, claims, demands, promises, actions, suits, grievances, proceedings, complaints, charges, liabilities, damages, debts, taxes, allowances, and remedies of any type, including but not limited to those arising out of my employment with the Company Group (individually and collectively, "Claims") that I may have by reason of any matter, cause, act or omission. This release applies to Claims that I know about and those I may not know about occurring at any time on or before the date of execution of this Legal Release.

(b) This Legal Release includes a release of all rights and Claims under, as amended, Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act of 1967, the Rehabilitation Act of 1973, the Civil Rights Acts of 1866 and 1991, the Americans with Disabilities Act of 1990, the Employee Retirement Income Security Act of 1974, the Equal Pay Act of 1963, the Family and Medical Leave Act of 1993, the Older Workers Benefit Protection Act of 1990, the Occupational Safety and Health Act of 1970, the Worker Adjustment and Retraining Notification Act of 1989 and the Sarbanes-Oxley Act of 2002, as well as any other federal, state, or local statute, regulation, or common law regarding employment, employment discrimination, termination, retaliation, equal opportunity, or wage and hour. I specifically understand that I am releasing Claims based on age, race, color, sex, sexual orientation or preference, marital status, religion, national origin, citizenship, veteran status, disability and other legally protected categories.

(c) This Legal Release also includes a release of any C[illegible] contrac any tortious act or other civil wrong, attorneys' fees and all legally [illegible] tion ar benefit claims including without limitation Claims concerning sala[illegible] ward(s grant(s), or purchase(s) under any equity and incentive compensation [illegible]

(d) In addition, I am waiving my right to pursue any C[illegible] Compa Group and Releasees under any collective bargaining agreeme[illegible] disp



resolution procedure, including any arbitration policy.

I acknowledge that this Legal Release is intended to include, without limitation, all Claims known or unknown that I have or may have against the Company Group and Releasees through the Effective Date of this Legal Release.

(e) **I acknowledge that I have had at least 21 calendar days from the date of my termination of employment with the Company (the "Termination Date") to consider the terms of this Legal Release; that I have been advised to consult with an attorney regarding the terms of this Legal Release prior to executing it; that I have consulted with my attorney, that I fully understand all of the terms and conditions of this Legal Release, that I understand that nothing contained herein contains a waiver of claims arising after the date of execution of this Legal Release, and I am entering into this Legal Release knowingly, voluntarily and of my own free will. I further understand that my failure to sign this Legal Release and return such signed Legal Release to the Company, 4545 Airport Way, Denver, CO 80239 by 5:00 pm on the 22nd day after the Termination Date will render me ineligible for the payments and benefits described herein.**

(f) I understand that once I sign and return this Legal Release to the Company, I have 7 calendar days to revoke it. I may do so by delivering to Andrea Warfield, Employee Relations Manager, Frontier Airlines, Inc., 4545 Airport Way, Denver, CO 80239 written notice of my revocation within the 7-day revocation period (the "Revocation Period"). This Legal Release will become effective on the 8th day after I sign and return it to the Company ("Effective Date"), provided that I have not revoked it during the Revocation Period.

YOU ARE HEREBY ADVISED BY THE COMPANY TO CONSULT WITH AN ATTORNEY BEFORE SIGNING THIS LEGAL RELEASE.

I HAVE READ THIS LEGAL RELEASE AND UNDERSTAND ALL OF ITS TERMS. I SIGN AND ENTER THIS LEGAL RELEASE KNOWINGLY AND VOLUNTARILY WITH FULL KNOWLEDGE OF WHAT IT MEANS.

Print name:

Signature:

Date:



Exhibit E

Frontier Airlines, Inc.
4545 Airport Way
Denver, Colorado 80239

## LEGAL RELEASE

This Employment Separation & Legal Release Agreement ("the Legal Release") is between Racquel Neill ("Employee") and Frontier Airlines, Inc., its parent, subsidiaries, affiliates and predecessors, and their respective officers, directors, employees, agents, representatives and insurers (collectively the "Company").

WHEREAS, the Company has eliminated Employee's current position of Sales and Distribution Manager, resulting in Employee's termination of employment effective March 2, 2018;

WHEREAS, on December 4, 2017, Employee filed a charge of discrimination against the Company with the US. Equal Employment Opportunity Commission ("EEOC") and the Colorado Civil Rights Division ("CCRD") alleging that the Company discriminated against Charging Party based upon her sex (female) and in retaliation for engaging in a protected activity (EEOC Charge No. 32A-2018-00123 and CCRD Charge No. FF2018235675) (collectively, the "Charge");

WHEREAS, the Parties now desire to effect between themselves a full, complete and final settlement and release of any and all claims and other differences that do, could or may hereafter exist between them, including without limitation, any and all claims and causes of action relating to Employee's employment with the Company, and including but not limited to the claims asserted by Employee in the Charge.

1). <u>Separation Benefits</u>. Employee's employment with the Company will be separated effective March 2, 2018. In exchange for the execution and delivery of this Legal Release, the Company will provide Employee with the following consideration (the "Benefits"):

a. A severance payment of $31,621.20 will be payable to you in accordance with the Company's regular payroll cycles, and the payment shall be subject to all applicable tax withholding.
b. Employee acknowledges that the consideration set forth in this subsection is in addition to and over and above any amounts or benefits due to Employee under the Company's policies or practices. Employee further acknowledges that Employee is receiving valuable consideration under this Legal Release to which Employee would not otherwise be entitled.
c. The Company will make the payments referred to in Section 'a' above beginning the first regular payroll pay date after the Effective Date, as defined below. Employee acknowledges that the Company is obligated to and will withhold appropriate taxes from all payments paid by Company to the Employee pursuant to this Legal Release.
d. Your current health insurance coverage will continue through March 31, 2018, after which time you will be eligible for COBRA coverage. Should you select COBRA, Frontier will pay the company portion through July 31, 2018.

2). <u>Withdrawal of EEOC Charge</u>. In consideration of the Benefits described in Section 1 above, Employee agrees to withdraw the Charge within seven (7) days of the Effective Date. However, nothing in this Legal Release prevents Employee from participating in any investigation or proceeding conducted by the EEOC or CCRD with respect to the Charge. Further, nothing in this Legal Release is intended to waive claims (i) for unemployment or workers' compensation



Frontier Airlines, Inc.
4545 Airport Way
Denver, Colorado 80239

benefits, (ii) for vested rights under ERISA-covered employee benefit plans as applicable on the date Employee signs this Legal Release, (iii) that may arise after Employee signs this Legal Release, (iv) for reimbursement of expenses under the Company's expense reimbursement policies, or (v) which cannot be released by private agreement. In addition, nothing in this Legal Release limits or affects Employee's right to challenge the validity of this Legal Release under the ADEA or the OWBPA, prevents Employee from filing a charge or complaint with or from participating in an investigation or proceeding conducted by the EEOC, the CCRD, the National Labor Relations Board, the Securities and Exchange Commission, or any other any federal, state or local agency charged with the enforcement of any laws, including providing documents or any other information. Further, nothing in this Legal Release limits Employee from exercising rights under Section 7 of the NLRA to engage in protected, concerted activity with other employees. However, by signing this Legal Release, Employee is waiving rights to individual relief (including backpay, frontpay, reinstatement or other legal or equitable relief) in any charge, complaint, or lawsuit or other proceeding brought by Employee or on Employee's behalf by any third party, except for any right Employee may have to receive a payment or award from a government agency (and not the Company) for information provided to the government agency or otherwise where prohibited.

3). Release. In consideration of the Benefits described in Section 1 above, Employee further agrees to the following release terms.

(a) On behalf of myself, my agents, assignees, attorneys, heirs, executors and administrators, I hereby release the Company and its predecessors, successors and assigns, their current and former parents, affiliates, subsidiaries, divisions and joint ventures (collectively, the "Company Group") and all of their current and former officers, directors, employees, and agents, in their capacity as Company Group representatives (individually and collectively, "Releasees") from any and all controversies, claims, demands, promises, actions, suits, grievances, proceedings, complaints, charges, liabilities, damages, debts, taxes, allowances, and remedies of any type, including but not limited to those arising out of my employment with the Company Group (individually and collectively, "Claims") that I may have by reason of any matter, cause, act or omission. This release applies to Claims that I know about and those I may not know about occurring at any time on or before the date of execution of this Legal Release.

(b) This Legal Release includes a release of all rights and Claims under, as amended, Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act of 1967, the Rehabilitation Act of 1973, the Civil Rights Acts of 1866 and 1991, the Americans with Disabilities Act of 1990, the Employee Retirement Income Security Act of 1974, the Equal Pay Act of 1963, the Family and Medical Leave Act of 1993, the Older Workers Benefit Protection Act of 1990, the Occupational Safety and Health Act of 1970, the Worker Adjustment and Retraining Notification Act of 1989 and the Sarbanes-Oxley Act of 2002, as well as any other federal, state, or local statute, regulation, or common law regarding employment, employment discrimination, termination, retaliation, equal opportunity, or wage and hour. I specifically understand that I am releasing Claims based on age, race, color, sex, sexual orientation or preference, marital status, religion, national origin, citizenship, veteran status, disability and other legally protected categories.

(c) This Legal Release also includes a release of any Claims for breach of contract, any tortious act or other civil wrong, attorneys' fees, and all legally waivable compensation and benefit claims including without limitation Claims concerning salary, bonus, and any award(s),



Frontier Airlines, Inc.
4545 Airport Way
Denver, Colorado 80239

grant(s), or purchase(s) under any equity and incentive compensation plan or program.

(d) In addition, I am waiving my right to pursue any Claims against the Company Group and Releasees under any collective bargaining agreement and/or applicable dispute resolution procedure, including any arbitration policy.

I acknowledge that this Legal Release is intended to include, without limitation, all Claims known or unknown that I have or may have against the Company Group and Releasees through the Effective Date of this Legal Release.

(e) **I acknowledge that I have had at least 21 calendar days from the date of my termination of employment with the Company (the "Termination Date") to consider the terms of this Legal Release, that I have been advised to consult with an attorney regarding the terms of this Legal Release prior to executing it, that I have consulted with my attorney, that I fully understand all of the terms and conditions of this Legal Release, that I understand that nothing contained herein contains a waiver of claims arising after the date of execution of this Legal Release, and I am entering into this Legal Release knowingly, voluntarily and of my own free will. I further understand that my failure to sign this Legal Release and return such signed Legal Release to the Company, 4545 Airport Way, Denver, CO 80239 by 5:00 pm on the 22nd day after the Termination Date will render me ineligible for the payments and benefits described herein.**

(f) I understand that once I sign and return this Legal Release to the Company, I have 7 calendar days to revoke it. I may do so by delivering to Andrea Warfield, Employee Relations Manager, Frontier Airlines, Inc., 4545 Airport Way, Denver, CO 80239 written notice of my revocation within the 7-day revocation period (the "Revocation Period"). This Legal Release will become effective on the 8th day after I sign and return it to the Company ("Effective Date"); provided that I have not revoked it during the Revocation Period.

YOU ARE HEREBY ADVISED BY THE COMPANY TO CONSULT WITH AN ATTORNEY BEFORE SIGNING THIS LEGAL RELEASE.

I HAVE READ THIS LEGAL RELEASE AND UNDERSTAND ALL OF ITS TERMS. I SIGN AND ENTER THIS LEGAL RELEASE KNOWINGLY AND VOLUNTARILY, WITH FULL KNOWLEDGE OF WHAT IT MEANS.

Print name: ______________________________

Signature: ______________________________

Date: ______________________________