**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Case No. 1:19-cv-02362-NRN

RAQUELL NEILL,

               Plaintiff,

v.

FRONTIER AIRLINES,

               Defendant.

---

**DEFENDANT FRONTIER AIRLINES, INC.'S ANSWER AND DEFENSES TO
PLAINTIFF'S AMENDED COMPLAINT**

---

Defendant Frontier Airlines ("Frontier"), by and through its attorneys, Danielle Kitson and Carolyn Theis of Littler Mendelson, P.C., submits the following Answer and Defenses to Plaintiff's Amended Complaint [ECF. No. 9].

**A.**      **PLAINTIFF'S INFORMATION**

**Frontier lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth under the section titled "A. Plaintiff's Information," and therefore, denies them.**

**B.**      **DEFENDANT(S) INFORMATION**

**Frontier denies the allegations set forth under the section titled "Defendant(s) Information."**

**C.**      **JURISDICTION**

**Frontier denies that Plaintiff is entitled to the relief she seeks under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, et seq. ("Title VII"), but does not contest this Court's jurisdiction over her claims.**

D.    **STATEMENT OF CLAIM(S)**[1]

***Claim One: Title VII Discrimination Based on Sex***

1.    Comes now the Plaintiff, Raquell Neill, and files a notice of suit on and to her former employer, Frontier Airlines, located at 7100 Tower Road, Denver, CO 80249.

> **Frontier admits that Plaintiff is a former Frontier employee. Frontier denies the remaining allegations set forth in Paragraph 1 of the Complaint.**

2.    This suit is based on a CHARGE OF SEX DISCRIMINATION.

> **Frontier admits that Plaintiff submitted a Charge of Sex Discrimination to the U.S. Equal Employment Opportunity Commission ("EEOC") and the Colorado Civil Rights Division ("CCRD"), which speaks for itself. Frontier denies the remaining allegations set forth in Paragraph 2 of the Complaint.**

3.    The facts surrounding this charge are based on facts as Frontier Airlines treated Ms. Neill unfairly as a woman and failed to provide the opportunity to operate within the scope of her job and apply and interview for the position she was doing for months, on a temporary basis.

> **Frontier denies the allegations set forth in Paragraph 3 of the Complaint.**

4.    The Plaintiff, Raquell Neill is a woman and therefore is in a protective class under Title 7 and requests this Court to review the facts of this case listed below and hold a hearing regarding the evidence presented and thereby hold the defendant accountable as charged.

> **Frontier admits that Plaintiff is a woman and therefore, falls within a protected class under Title VII. Frontier denies the remaining allegations set forth in Paragraph 4 of the Complaint.**

5.    Because of the facts presented below, the Plaintiff is requesting the Court to grant the relief of $300,000.00 to her for the following reasons:

> a.    In April 2016 the defendant hired Ms. Neill as Manager of Sales & Distribution. At the time, Ms. Neill reported to Michael Pewether who was her Director.

> **Frontier admits that Plaintiff was hired in April 2016 as Manager of Sales and Distribution to assist then Senior Director of Marketing and Sales, Michael Pewther.**

---

[1] For purposes of facilitating the Court's review and the parties' reference to the Complaint and Answer, Frontier has converted the un-numbered paragraphs under the section of Plaintiff's Complaint titled "Statement of Claim(s)" into numbered sentences. Frontier's response to each numbered allegation is indicated in bold font.

b.  Ms. Neill and her co-worker, Eric Engel both reported to Mr. Pewether.

**Frontier admits that at the time Plaintiff was hired, both she and former Frontier employee, Eric Engel reported to Mr. Pewether.**

c.  However, after approximately 2 months, Mr. Pewether was moved to another department with Frontier Airlines. Ms. Neill began reporting to VP Tyri Sqyres.

**Frontier admits that Plaintiff began reporting to Vice President, Marketing Tyri Squyres after Mr. Pewether transferred to a different position within the company.**

d.  While working for Michael Pewether, Ms. Neill's responsibilities included:

i.  Positioning of Frontier Airlines in third party distribution channels for strategy, analysis, policy development, and implementation.

ii.  Lead and participate in e-commerce cross functionality teams to include IT and Business Analysists to develop and implement distribution related projects for example selling ancillary products.

iii.  Provide direction, feedback support to higher up management on functional, and project responsibilities.

iv.  Budget forecasting, relationships with GDS's/OTA's partners, and assist with sales, and marketing projects to further brand and increase sales.

**Answering Paragraph 5d of the Complaint, Frontier states that Plaintiff's job duties are memorialized in the written job description for the Sales and Distribution Manager position, which speaks for itself and denies any characterization inconsistent with that job description.**

6.      After Mr. Pewether was moved to another department, (on or about July 2016) Ms. Neill's responsibilities increased to cover Mr. Pewether's duties which included but were not limited to the following: Distribution methods for various fare products (e.g., GDS/OTA's contracts, package net fares, etc.). Communicating significant competitor actions and Frontier's response to leadership. Sought out ways in which Frontier's pricing team could increase sells with third party distributions. Explored how new technologies could drive improvements to revenue, efficiency and fare filing accuracy and assisted with budgeting efforts as needed.

**Frontier admits that Mr. Pewether transferred to another position with Frontier. Frontier lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 6 of the Complaint and therefore, denies them.**

3

7.      In addition, Ms. Neill participated in project planning, process updates, and contributed to strategic planning.

**Frontier lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 6 of the Complaint and therefore, denies them.**

8.      Despite doing Mr. Pewether's job, Ms. Neill was never given a change of title or pay.

**Frontier admits that Plaintiff's title remained Sales and Distribution Manager until Frontier terminated her employment. Frontier denies the remaining allegations set forth in Paragraph 8 of the Complaint.**

9.      She did make a complaint regarding this issue to her former Director Michael Pewether.

**Frontier lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 9 of the Complaint and therefore, denies them.**

10.      It should be noted here that at this time, after Mr. Pewether was placed into another department, Ms. Neill reported directly to the VP Tyri Sqyres.

**Frontier admits that after Mr. Pewether transferred to a different position at Frontier, Plaintiff reported to Ms. Squyres.**

11.      Ms. Neill's duties were the duties of a Director, reporting to a VP and did so from approximately July 2016 to October 2017.

**Frontier denies the allegations set forth in Paragraph 11 of the Complaint.**

12.      This proves Ms. Neill was qualified to interview and be considered for the position of Senior Manager of Sales and Distribution.

**Frontier denies the allegations set forth in Paragraph 12 of the Complaint.**

13.      In addition, part of Ms. Neill's job responsibilities (both her regular job description and the job description of replacing Mr. Pewether) required traveling to vendor meetings.

**Frontier denies that Plaintiff was assigned duties beyond her role as Sales and Distribution Manager. Further answering, Frontier states that Plaintiff's job duties are memorialized in the written job description for the Sales and**

> **Distribution Manager position, which speaks for itself and denies any characterization inconsistent with that job description.**

14.     Ms. Neill did so while reporting to Mr. Pewether, however while reporting to Ms. Sqyres she was denied.

> **Frontier denies the allegations set forth in Paragraph 14 of the Complaint.**

15.     However, VP Tyri Sqyres did allowed the men to have unlimited travel to attend meetings or events.

> **Frontier denies the allegations set forth in Paragraph 15 of the Complaint.**

16.     When Ms. Neill asked why she could not travel via email, Ms. Sqyres advise this is not necessary.

> **Frontier states that the email Plaintiff references in Paragraph 16 of the Complaint speaks for itself and denies any characterization inconsistent with the email.**

17.     And instead of embracing Ms. Neill as a woman, Ms. Neill is claiming the defendant, Frontier Airlines targeted her as a woman without reason and replaced her with a man without giving Ms. Neill any opportunity to apply or interview for the position.

> **Frontier denies the allegations set forth in Paragraph 17 of the Complaint.**

18.     VP Tyri Sqyres was the VP of Marketing and did not understand sales and distribution as Mike Pewether did.

> **Frontier admits that Ms. Squyres was Frontier's Vice President of Marketing. Frontier denies the remaining allegations set forth in Paragraph 18 of the Complaint.**

19.     Since Ms. Neill did, VP Tyri Sqyres should have allowed Ms. Neill to operate as hired, and travel.

> **Frontier denies the allegations set forth in Paragraph 19 of the Complaint.**

20.     Travel was needed to perform her specific duties.

> **Answering Paragraph 20 of the Complaint, Frontier states that Plaintiff's job duties are memorialized in the written job description for the Sales and Distribution Manager position, which speaks for itself and denies any characterization inconsistent with that job description.**

21.    However, Ms. Neill was not allowed.

**Frontier denies the allegations set forth in Paragraph 21 of the Complaint.**

22.    Ms. Neill, because of her added duties, worked closely with the legal department with distribution contracts.

**Frontier denies that Plaintiff was assigned duties beyond her role as Sales and Distribution Manager. Frontier lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations set forth in Paragraph 22 of the Complaint and therefore, denies them.**

23.    Ms. Neill, who has worked in the travel industry for over 26 years knew this denial was unnecessary and asked the legal department for help in responding to VP Tyri Sqyres.

**Frontier denies that Ms. Squyres refused to ever allow Plaintiff to travel. Further answering, Frontier states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations set forth in Paragraph 23 of the Complaint and therefore, denies them.**

24.    The legal department encouraged Ms. Neill to send to VP Tyri Sqyres a copy of the code of ethics which speaks to the gift and entertainment policy.

**Frontier admits that the Code of Ethics referenced in Paragraph 24 of the Complaint speaks for itself and denies any characterization inconsistent with the document. Further answering, Frontier states that it lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 24 of the Complaint and therefore, denies them.**

25.    This policy does speak to how Frontier Airlines builds relationships with the OTA's (Online Travel Agency's), who interact with Frontier Airlines.

**Frontier states that Frontier's Code of Ethics policy referenced in Paragraph 25 of the Complaint speaks for itself and denies any characterization inconsistent with the document.**

26.    Ms. Neill did this, however, even though Ms. Neill had received an invitation to the U.S. Open, (an honor to receive in the industry), VP Tyri Sqyres again denied the travel request.

**Frontier states that it lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 26 of the Complaint and therefore, denies them.**

27.     However, shortly thereafter, the men in the department attended a baseball game, with customers, and that event required travel.

**Frontier states that it lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 27 of the Complaint and therefore, denies them.**

28.     In October 2017, Ms. Neill was advised by VP Tyri Sqyres that a position for a Sr. Manager of Sales and Distribution would be posted.

**Frontier states that it lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 28 of the Complaint and therefore, denies them.**

29.     Meanwhile, still doing Mr. Pewether's job, Ms. Neill stated she would be applying for the position.

**Frontier denies the allegations set forth in Paragraph 29 of the Complaint.**

30.     VP Tyri Sqyres response to Ms. Neill was "well, we can't stop you."

**Frontier denies the allegations set forth in Paragraph 30 of the Complaint.**

31.     However, in actuality Frontier Airlines did stop Ms. Neill, because from that day forward, along with Eric Engel, who was Ms. Neill's co-worker, they together looked every day for the open position, however, it never presented itself within the Frontier Airlines career opportunity page.

**Frontier states that it lacks knowledge or information sufficient to form a belief about the truth of the allegation that Plaintiff and Mr. Engel checked Frontier's career opportunities' page every day for the Sr. Manager of Sales and Distribution. Frontier denies the remaining allegations set forth in Paragraph 31 of the Complaint.**

32.     Ms. Neill proved she was qualified for the position, but facts will show she was not allowed to apply or interview for the position.

**Frontier denies the allegations set forth in Paragraph 32 of the Complaint.**

33.     Ms. Neill also checked with Human Resources, (HR) and HR could not provide a date stamp of when the position was posted.

**Frontier lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 33 of the Complaint and therefore, denies them.**

34.     Even though Ms. Neill was actively performing her job duties and the job duties of the previous Director, for months, Ms. Neill was not given the opportunity to apply.

**Frontier denies the allegations set forth in Paragraph 32 of the Complaint.**

35.     Even if Ms. Neill "missed" the opening, Frontier Airlines Employee Handbook states a VP can give permission for an interview.

**Frontier states that the Employee Handbook speaks for itself and denies any characterization inconsistent with that document.**

36.     This permission was never given.

**Frontier states that it lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 36 of the Complaint and therefore, denies them.**

37.     Frontier Airlines does acknowledge (even to the EEOC), that Ms. Neill, did inquired about the position.

**Frontier admits the allegations set forth in Paragraph 37 of the Complaint.**

38.     But, never was there an exception given to apply.

**The allegations set forth in Paragraph 38 of the Complaint are non-sensical and therefore, Frontier cannot respond. To the extent a response is required, Frontier denies the allegations set forth in Paragraph 38 of the Complaint.**

39.     Frontier Airlines states it followed "all" of its recruiting and hiring procedures when posting and interviewing for the Senior Manager of Sales and Distribution position, but Ms. Neill takes issue with that statement because she was not offered an exception even though she inquired about the position and Frontier Airlines is acknowledging that Ms. Neill did so. AND to this date, Ms. Neill has seen zero evidence of the position ever being posted.

**Frontier states that Paragraph 39 of the Complaint states a legal conclusion to which no response is required. To the extent a response is required, Frontier states that it lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 39 of the Complaint and therefore, denies them.**

40.     Eric Engel can also attest to this fact as well.

**Frontier states that it lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 40 of the Complaint and therefore, denies them.**

41.     Ms. Neill was informed by an outside vendor for Frontier Airlines that Will Evans, a man, had been hired for the Sr. Manager of Sales and Distribution.

**Frontier admits that it hired William Evans for the Sr. Manager of Sales and Distribution position. Frontier lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations set forth in Paragraph 41 of the Complaint and therefore, denies them.**

42.     Mr. Evans did not have the same experience and was not qualified for the position.

**Frontier admits that Mr. Evans and Plaintiff did not have the same experience. Frontier denies the remaining allegations of Paragraph 42 of the Complaint.**

43.     After finding out about this, Ms. Neill ask VP Tyre Sqyres in a meeting, if indeed Mr. Evans had been hired.

**Frontier lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 43 of the Complaint and therefore, denies them.**

44.     VP Tyre Sqyres denied that Will Evans had been hired, however, Ms. Neill did some research and discovered there is evidence of him being interviewed 60 days prior to Ms. Neill even hearing of the job opening, AND Mr. Evans had also announced his start date via LinkedIn.

**Frontier lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 44 of the Complaint and therefore, denies them.**

45.     After all of this, Ms. Neill had a meeting with Anthony Sabia, Manager of HR.

**Frontier admits that Plaintiff met with Anthony Sabia, Frontier Director of HR Services.**

46.     Anthony Sabia, when asked by Ms. Neill, could not produce evidence the job was ever posted.

> **Frontier lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 46 of the Complaint and therefore, denies them.**

47.     Within the scope of all of this Ms. Neill was also not allowed to attend Manager meetings, on or off campus, however, all of the men in the department were.

> **Frontier denies the allegations set forth in Paragraph 47 of the Complaint.**

48.     At one point, there was a big conference that took place in the Utah area.

> **Frontier admits that during Plaintiff's employment with Frontier, there was a conference in Utah.**

49.     The men (Stephen Shaw, Thomas, Kyle Carpenter and more), were allowed to attend, and Ms. Neill was not.

> **Frontier lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 49 of the Complaint and therefore, denies them.**

50.     After speaking to VP Tyri Sqyres about it, Raquell was approved for attending the conference for one day.

> **Frontier admits that Ms. Squyres approved Plaintiff's attendance at a conference in Utah for a day.**

51.     VP Tyri Sqyres sent this approval for one day 48 hours prior to the event, when all the men attending were approved months before for the entire week.

> **Frontier lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 51 of the Complaint and therefore, denies them.**

52.     Previously, when Ms. Neill reported to Michael Pewether the travel and attending meetings with vendors and team member meetings was the expectation, never the exception.

> **Frontier lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 52 of the Complaint and therefore, denies them.**

53.     It should also be noted here that when Will Evans came on board with Frontier Airlines, as the Sr. Manager of Sales and Distribution, he traveled immediately.

> **Frontier lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 53 of the Complaint and therefore, denies them.**

54.     There was also an individual, a man, Thomas Michael Laughershauer, in the department that would regularly shoot a nerf gun dart at Ms. Neill, Ms. Neill did complain to VP Tyri Sqyres about the behavior and nothing was done, and the behavior continued with laughter.

> **Frontier lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 54 of the Complaint and therefore, denies them.**

55.     Ms. Neill does have eye witnesses she can produce to testify to these actions.

> **Frontier lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 55 of the Complaint and therefore, denies them.**

56.     These darts caused welts and even bruises, still nothing was done to stop it.

> **Frontier lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 56 of the Complaint and therefore, denies them.**

57.     Further, Ms. Neill's employment reviews were all "Met Expectations" and never below.

> **Frontier denies the allegations set forth in Paragraph 57 of the Complaint.**

58.     However, the men in the department, who received the same type of review, (Doug Bertram, Eric Engel, Thomas Michael, Stephen Shaw), received 5% pay raises from VP Tyri Sqyres but as a woman, Ms. Neill received far less.

> **Frontier denies the allegations in Paragraph 58 of the Complaint.**

59.     Ms. Neill's raise came to below 2%.

> **Frontier admits the allegations set forth in Paragraph 59 of the Complaint.**

60.     In addition, Ms. Neill worked overtime and weekends and the men in the department did not do so as it was not required.

**Frontier admits that Plaintiff occasionally worked overtime and on weekends. Frontier denies the remaining allegations set forth in Paragraph 60 of the Complaint.**

61.    Ms. Neill did have a conversation with Frontier Airlines legal representative regarding the issue, however, the meeting was informal and not necessarily deemed documented.

**Frontier lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 61 of the Complaint and therefore, denies them.**

62.    It was after all of these facts and a few more meetings with HR, Ms. Neill filed a sex discrimination charge.

**Frontier admits Plaintiff filed a Charge of Discrimination with the EEOC and CCRD. Frontier lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations set forth in Paragraph 62 of the Complaint and therefore, denies them.**

63.    This charge was dated in December of 2017.

**Frontier admits that Plaintiff submitted a Charge of Discrimination with the EEOC and CCRD on or about December 4, 2017.**

64.    Ms. Neill is not sure when the actual documentation arrived into the Frontier Airlines system, but Ms. Neill's position was eliminated in February 2018 and she was offered a severance package twice, one greater than the other, however, both contained the stipulation to include dropping the EEOC charge.

**Frontier admits that it eliminated Plaintiff's employment on or around February 19, 2018 and offered her severance packages, which speak for themselves.  Frontier denies any characterization inconsistent with those documents.**

65.    When Ms. Neill's position was eliminated, the situation was tense.

**Plaintiff's allegation in Paragraph 65 of the Complaint is too vague and ambiguous for Frontier to respond.**

66.    Mr. Evans asked Ms. Neill to follow him to a conference room where Andrea Warfield, an HR Representative was sitting.

**Frontier admits that Mr. Evans discussed Frontier's elimination of Plaintiff's position in a conference room with Plaintiff and Employee Relations Manager, Andrea Warfield.**

67.     With Will Evans present, Andrea Warfield pushed the paperwork toward Ms. Neill to sign in order to receive the severance with the stipulation of releasing Frontier Airlines from the EEOC charge.

**Frontier admits that Ms. Warfield and Mr. Evans presented Plaintiff with severance paperwork for her consideration. Further answering, Frontier states that the paperwork speaks for itself and Frontier denies any characterization inconsistent with those documents.**

68.     Ms. Neill told Ms. Warfield, she wasn't signing anything and stated I'd like to get my personal belongings.

**Frontier admits that Plaintiff did not sign the severance package paperwork Frontier offered her. Frontier lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations set forth in Paragraph 68 of the Complaint and therefore, denies them.**

69.     Ms. Neill was not allowed to do this and was advised that her personal belongings will be mailed within 24hrs.

**Frontier lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 69 of the Complaint and therefore, denies them.**

70.     Security then walked Ms. Neill out of the building as if Ms. Neill was fired, not as an employee whose position was eliminated.

**Frontier lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 70 of the Complaint and therefore, denies them.**

71.     Frontier Airlines did send me my personal belongings, two days later, however, the items were carelessly shipped and arrived broken, and things were missing.

**Frontier lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 71 of the Complaint and therefore, denies them.**

72.     It was then that Ms. Neill amended her charge of discrimination to include the charge of retaliation the same day of being let go.

> **Frontier admits that Plaintiff submitted an Amended Charge of Discrimination to the EEOC and CCRD on or around March 16, 2018. Frontier lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations set forth in Paragraph 72 of the Complaint and therefore, denies them.**

73.    Ms. Neill was placed in a bad place financially and mentally by losing her job at Frontier Airlines and was not able to afford an attorney and therefore has represented herself.

> **Frontier lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 73 of the Complaint and therefore, denies them.**

74.    Ms. Neill cannot help but feel this case would have gone further with an attorney who knows the laws of this system.

> **Paragraph 74 of the Complaint is not an allegation, but the expression of a personal belief to which no response is required. To the extent that a response is required, Frontier states that it lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 74 of the Complaint and therefore, denies them.**

75.    However, the EEOC did find it necessary to do an investigation and gave Ms. Neill the right to sue.

> **Frontier admits that the EEOC investigated Plaintiff's Charge of Discrimination and issued Plaintiff a Notice of Right to Sue. Further answering, Frontier states that the Notice of Right to Sue speaks for itself and denies any characterization inconsistent with the Notice.**

76.    Stating within the Dismissal and Notice of Rights to Sue letter (attached as Exhibit 1), specifically this statement: This does not certify that the respondent is in compliance with the statues.

> **Frontier admits that Plaintiff has attached what appears to be a copy of the Notice of Right to Sue as Exhibit 1 to her Complaint. Further answering, Frontier states that the Notice of Right to Sue speaks for itself and denies any characterization inconsistent with the Notice.**

77.    In conclusion, I, Raquell Neill was treated unfairly and am petitioning this Court to intervene on my behalf.

> **Frontier denies the allegations set forth in Paragraph 77 of the Complaint, including that Plaintiff is entitled to the relief requested.**

78.     And I request that after the Court reviews the documents presented, and based on the fact that the EEOC basically said in its notice of dismissal that this investigation does not certify that Frontier Airlines (defendant), is in compliance with the statues, or in other words not following them.

> **Frontier states that the Notice of Right to Sue speaks for itself and denies any characterization inconsistent with the Notice.**

79.     GRANT such relief to Plaintiff based on the right to sue, by the EEOC, for sex discrimination with retaliation as charged.

> **Frontier denies the relief requested in Paragraph 79 of the Complaint. Further answering, Frontier states that the Notice of Right to Sue speaks for itself and denies any characterization inconsistent with the Notice.**

### *Claim Two: Title VII Retaliation Based on Sex*

80.     I was discriminated against because of my sex.

> **Frontier states that Paragraph 80 of the Complaint states a legal conclusion to which no response is required. To the extent that a response is required, Frontier denies the allegations in Paragraph 80 of the Complaint.**

81.     I complained to Michael Pewether, my former boss and to Anthony Sabia, of Human Resources and nothing became of it.

> **Frontier denies that Plaintiff complained of sex discrimination to Mr. Pewether or Mr. Sabia.**

82.     During my exit meeting, Andrea Warfield of Human Resources, pushed the signing documents toward me insisting that I sign the severance package along with the release form to release the charge I filed with the EEOC.

> **Frontier admits that Ms. Warfield presented Plaintiff with severance paperwork for her consideration during her exit interview.  Frontier denies the remaining allegations set forth in Paragraph 82 of the Complaint. Further answering, Frontier states that the severance paperwork speaks for itself and denies any characterization inconsistent with the paperwork.**

83.     Filed the Sex Discrimination charge in December 2017 and on February 2018 I was losing my job.

> **Frontier admits that Plaintiff submitted a Charge of Discrimination to the EEOC and CCRD in December 2017 and that Frontier informed Plaintiff that her position had been eliminated in February 2018.**

84.     It should be noted here Frontier Airlines when confronted by the EEOC regarding the charge, Frontier Airlines in their response to the EEOC stated they had not even done a full investigation yet.

> **Answering Paragraph 84 of the Complaint, Frontier states that the Position Statement and materials submitted to the EEOC and CCRD in response to Plaintiff's Charge of Discrimination speak for themselves and denies any characterization inconsistent with those materials.**

85.     I believe I did lose my job because I held Frontier Airlines accountable for their poor performance regarding my protected class as a female.

> **Paragraph 85 of the Complaint is not a factual allegation that can be denied or admitted, but the expression of a personal belief to which no response is required. To the extent that a response is required, Frontier denies the allegations set forth in Paragraph 85 of the Complaint.**

86.     I hereby incorporate all allegations and again request this Court take action of relief on my behalf in the amount of $300,000.00.

> **Frontier incorporates by reference the preceding responses contained in this Answer. Further answering, Frontier denies that Plaintiff is entitled to the relief requested in Paragraph 86 or any other paragraph of the Complaint.**

**E.     ADMINISTRATIVE PROCEDURES**

> **Frontier does not dispute that Plaintiff submitted a Charge of Discrimination to the EEOC and the CCRD and received a Notice of Right to Sue.**

**F.     REQUEST FOR RELIEF**

I, Ms. Neill, Plaintiff is requesting relief of $300,000.00 for the following reasons: Loss wages and damages including benefits and commissions, compensatory and punitive damages.

> **Frontier states that the "Request for Relief" section of Plaintiff's Complaint states a legal conclusion to which no response is required. To the extent that a response is required, Frontier denies that Plaintiff is entitled to any of the relief requested in this section or any other section of her Complaint.**

I am also requesting a jury trial.

**Frontier does not contest Plaintiff's right to a jury trial.**

**Frontier denies all allegations not specifically admitted herein.**

## DEFENSES

Frontier reserves the right to rely upon the foregoing and following denials, defenses, and defenses to the claims asserted in the Complaint to the extent supported by evidence later developed or facts later learned, without now assuming the burden of proof on any such defense that would otherwise rest on Plaintiff and with the reservation of its right to amend or supplement its responses to the Complaint, as well as its defenses, as information is gathered through discovery.

### FIRST DEFENSE

Plaintiff has failed to state any claim up on which relief can be granted.

### SECOND DEFENSE

Plaintiff's claims are barred by the doctrines of waiver, equitable estoppel, acquiescence, and the applicable statute of limitations.

### THIRD DEFENSE

Upon information and belief, Plaintiff has failed to mitigate her damages, if any.

### FOURTH DEFENSE

To the extent that Plaintiff has failed to meet any prerequisites to filing any claim alleged in this lawsuit, such claim is barred.

### FIFTH DEFENSE

Upon information and belief, Plaintiff may have unclean hands or may have an improper purpose in filing this action.

## SIXTH DEFENSE

Plaintiff was an at-will employee, subject to termination at any time for any reason.

## SEVENTH DEFENSE

Frontier effectively maintains and publicizes policies prohibiting discrimination and retaliation in the workplace, and trains its employees and supervisors to comply with those policies. Accordingly, Plaintiff is not entitled to recover punitive damages.

## EIGHTH DEFENSE

Frontier makes good faith efforts to prevent discrimination and retaliation from occurring in the workplace, and is therefore not liable to the extent that employment decisions of agents were contrary to Frontier's good faith efforts to comply with the law.

## NINTH DEFENSE

All actions taken by Frontier were taken in good faith, and were based on legitimate non-discriminatory, non-retaliatory reasons.

## TENTH DEFENSE

Plaintiff's claims are barred if and to the extent they are based on matters that were not included in the underlying Charge of Discrimination and Amended Charge of Discrimination or were not otherwise administratively exhausted.

## ELEVENTH DEFENSE

The challenged actions about which Plaintiff complains would still have been taken, notwithstanding any of Plaintiff's factual allegations, for legitimate and non-discriminatory, non-retaliatory reasons.

### TWELFTH DEFENSE

Plaintiff unreasonably failed to take advantage of the preventative or corrective opportunities provided by Frontier or to avoid harm otherwise.

### THIRTEENTH DEFENSE

Frontier at all times exercised reasonable care to prevent and promptly correct any discriminatory, harassing, or retaliatory behavior in the workplace.

### FOURTEENTH DEFENSE

Plaintiff's claims, or certain of them, are subject to statutory caps on damages and any damages awarded must be reduced to the level of the caps.

### FIFTEENTH DEFENSE

The Complaint fails to allege facts sufficient to state a claim that would support an award of any damages, including compensatory and punitive damages, against Frontier.

### SIXTEENTH DEFENSE

Plaintiff's claims are barred because no adverse employment action was taken because of her gender.

### SEVENTEENTH DEFENSE

Plaintiff's retaliation claims are barred because Frontier made its decision to eliminate her position prior to Plaintiff engaging in any protected activity.

### EIGHTEENTH DEFENSE

Plaintiff failed to follow Frontier's process to apply for a job opening or be considered for a position.

## NINETEENTH DEFENSE

Plaintiff's claims are barred because she failed to report any complaints or concerns regarding any alleged gender discrimination to Frontier management.

## RESERVATION OF DEFENSES

Frontier reserves the right to assert such additional defenses as may become apparent during the course of discovery.

WHEREFORE, Frontier respectfully requests that the Court:

a.      Enter an Order dismissing with prejudice the Amended Complaint in its entirety;

b.      Deny each and every demand, claim, and prayer for relief contained in the Complaint;

c.      Award Frontier its attorneys' fees and costs; and

d.      Grant such further relief as the Court may deem just and proper.

Respectfully submitted this 13th day of December, 2019.

                                   */s/ Carolyn B. Theis*
                                   Danielle L. Kitson
                                   Carolyn B. Theis
                                   LITTLER MENDELSON, P.C.
                                   1900 Sixteenth Street, Suite 800
                                   Denver, CO  80202
                                   Telephone: 303.629.6200
                                   Facsimile: 303.629.0200
                                   Email:  dkitson@littler.com
                                            catheis@littler.com

                                   *Attorneys for Defendant Frontier Airlines, Inc.*

## CERTIFICATE OF SERVICE

I certify that on this 13th day of December, 2019, I filed and served the foregoing

**DEFENDANT FRONTIER AIRLINES, INC.'S ANSWER AND DEFENSES TO PLAINTIFF'S AMENDED COMPLAINT** via CM/ECF to the following:

Raquell Neill
16569 Summit Drive
Omaha, NE 68136
rquellneill@gmail.com

*Plaintiff (pro se)*

s /Joanna Fox
Joanna Fox, Legal Secretary