**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Case No. 1:19-cv-02362-NRN

RAQUELL NEILL,

       Plaintiff,

v.

FRONTIER AIRLINES, INC.,

       Defendant.

**JOINT PROPOSED SCHEDULING ORDER**

**1.  DATE OF CONFERENCE AND APPEARANCES OF COUNSEL**

A Scheduling Conference in this case was held on January 2, 2020 at 2:30 p.m. Appearing for the parties were: Danielle Kitson and Carolyn Theis of Littler Mendelson, P.C., 1900 Sixteenth Street, Suite 800, Denver, CO 80202, (303) 629-6200, appearing for Defendant Frontier Airlines, Inc. ("Frontier" or "Defendant") and Raquell Neill ("Ms. Neill" or "Plaintiff"), 16569 Summit Drive, Omaha, NE 68136, 303-898-0032 appearing on behalf of herself.

**2.  STATEMENT OF JURISDICTION**

This Court properly has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1332.

**3.  STATEMENT OF CLAIMS AND DEFENSES**

    a.    **Plaintiff**: Frontier hired Plaintiff, (Ms. Neill) as a Distribution Manager on April 25, 2016. In that capacity, her duties were to manage the company's third-party distribution solutions to maintain or lower distributions costs, make the current distribution channels more

efficient and develop new associated revenue streams to increase sales and achieve corporate objectives.  At the time, Ms. Neill reported to Michael Pewether who was her Director. Ms. Neill and her co-worker, Eric Engel both reported to Mr. Pewether. However, after approximately 2 months, Mr. Pewether was moved to another department within Frontier Airlines. Ms. Neill and Eric Engel began reporting to VP Tyri Squyres directly. However, after Mr. Pewether was moved to another department, (on or about July 2016), Ms. Neill's responsibilities increased to cover Mr. Pewether's duties because the scope of her position as the Distribution Manager was like the scope of Mr. Pewether's responsibilities. To be clear, Eric Engel did not have "Distribution" within his title. Her capacity of duties changed to include the following: Distribution methods for various fare products (e.g., GDS (Global distribution system) / OTAs (Online Travel Agent contracts), and package net fares. Ms. Neill's additional responsibilities also included communicating significant competitor actions to leadership, participated in project planning, process updates and contributed to strategic planning. Ms. Neill also sought out ways in which Frontier's pricing team could increase sales with third party distribution, exploring new technologies to drive improvements to revenue and more. Ms. Neill carried this load of new responsibilities without a change of title or pay for over a year. Frontier is stating it posted for the open position for Senior Manager, Distribution and Sales on October 17, 2017. It should be noted here never has there been any proof provided of that job being posted. Eric Engel, Ms. Neill's coworker and Ms. Neill, watched for the job posting daily and it never presented itself.

Facts will show Ms. Neill did ask to apply for the position and was told by Vice President Tyri Squyres "we can't stop you." Facts will also show that Ms. Neill did have meetings with HR, Anthony Sabia, regarding this issue, and the defendant acknowledged these

2

HR meetings to the EEOC in their statement. Even if Ms. Neill 'missed' the posting, the Defendant's Employee Handbook clearly states an exception to apply can be made by a Vice President, and since Ms. Neill inquired to both the VP and HR and no exception was granted, she filed a discrimination charge.

Defendant claims to have had a legitimate, non-discriminatory reason for eliminating Ms. Neill's position, stating to the EEOC by doing so it assisted in funding the company's goals in order to fund a new leadership organization which required fewer personnel and higher salaries. It should be noted here, Ms. Neill's position was the only Management position that was eliminated, and the Defendant had already interviewed Williams Evans <u>6 months</u> prior to him being awarded the position, long before it was "supposedly" posted. Ms. Neill was not given an opportunity to interview for the promotion even though she inquired with the Vice President and even though she had been doing the job for over a year. In addition, Ms. Neill ask Anthony Sabia of Human Resources to show to her proof of the posted position, when she met with him and he could not produce it.

It should also be noted here there was a travel department (an entire department) that was released during this season, but these former employees were given a 60-day notice. Ms. Neill was told her job was eliminated with William Evans present along with Andrea Warfield, of Human Resources, on February 19, 2018 and she was walked off the property without even being allowed to collect her personal items. During the conversation with William Evans and the HR representative, Andrea Warfield, Ms. Neill was asked to accept severance that included signing a stipulation of releasing Frontier of the EEOC Discrimination charge. Ms. Neill refused to sign the paper to release the EEOC/CCRD charge. With that said, after being walked off the

3

property, Ms. Neill went directly to the EEOC office and amended the discrimination charge with an additional charge of retaliation.

On February 23, 2018 Ms. Neill wrote to Andrea Warfield via email and stated to Ms. Warfield of Human Resources she would agree to dismissing the EEOC/CCRD sexual discrimination with a retaliation charge if the stipulation included the following: 1 year of severance, 1 year of health insurance benefits and 1 year of flight benefits. On February 26, 2018, Ms. Neill received an email from HR Representative Ms. Warfield, acknowledging to Ms. Neill that she was in receipt of Ms. Neill's email from February 26, 2018 with a note stating Ms. Warfield would get back to Ms. Neill.

On March 5, 2018, Ms. Neill received an email from Andrea Warfield stating Frontier is willing to give Ms. Neill 20 weeks' severance with six months of her Cobra health benefits paid. Again, this included the stipulation of Ms. Neill, dismissing the EEOC/CCRD charges. Ms. Neill wrote back and said I would need more as stated. Ms. Warfield wrote back and stated unfortunately Frontier cannot agree to those terms.

In summary, further facts will show the Defendant's actions carried a false narrative because Ms. Neill was not allowed to interview, specifically because the job was never posted and further and even so, Ms. Neill did inquired to a Vice President to be able to apply for the position, Frontier does acknowledge this, and as the Frontier Employee Handbook states is doable, IF the employee missed the posting and an inquiry was made to the Vice President of the department, which Ms. Neill did and Frontier acknowledges this happened.

Clearly the Defendant chose to rid themselves of Ms. Neill, a female, who held the Defendant accountable to concealing their true intentions of hiring a male, William Evans,

4

instead of giving Ms. Neill, a female, a right to apply according to their hiring processes. Very suspect is the fact Frontier told the EEOC they had not even done a full investigation regarding Ms. Neill's sexual discrimination charge <u>weeks</u> after her position was eliminated (February 19, 2018), when her discrimination was file in <u>December 2017</u>. These action point to the Defendant having a motive to cloak the real intention of not allowing Ms. Neill, a female, to have the opportunity to apply and be promoted.

      b.    **Defendant**:

Frontier hired Ms. Neill as a Distribution Manager on April 25, 2016. In that capacity, her duties were to manage the company's third party distribution solutions to maintain or lower distributions costs, make the current distribution channels more efficient and develop new associated revenue streams to increase sales and achieve corporate objectives.

On October 17, 2017, Frontier posted an open position for Senior Manager, Distribution and Sales, which would have been a position senior to Ms. Neill's, with different responsibilities. Ms. Neill asked her supervisor about the posting, but never applied to the position. Ultimately, on October 26, 2017, Frontier offered the position to candidate William Evans, who was far more qualified than Ms. Neill both in prior experience and education (for example, the position required a bachelor's degree, which Ms. Neill did not have).

Frontier, therefore, had a legitimate, non-discriminatory reason for not promoting Ms. Neill to Senior Manager, Distribution and Sales: Ms. Neill never applied for the position she claims Frontier failed to place her in. Because it had no knowledge of Ms. Neill's apparent desire to be promoted, Frontier did not promote her.

In late 2016 into 2017, Frontier began planning a restructure of its Commercial Organization department for the 2018 fiscal year, which adjusted positions and funding in several departments. The goal of these adjustments was to optimize headcount with more senior leadership. As part of that restructure, Ms. Neill's Distribution Manager position was eliminated to assist the strategic company goal of funding more senior leadership positions. Ms. Neill's discharge was in no way related to her sex.

In addition, Frontier denies Ms. Neill's claims that she was excluded from meetings and training prior to the termination of her employment. Regardless, these allegations do not amount to significant changes in employment status to amount to adverse employment actions. Similarly, Ms. Neill's claim that she was asked to work on the weekend does not constitute an adverse employment action. Ms. Neill was a salaried employee for Frontier, and responsible for completing the duties of her position without regard for specific hours. The fact that Ms. Neill had to complete her required duties outside of a typical Monday – Friday timeframe is not an adverse action.

Frontier also denies Ms. Neill's allegation that "male colleagues" were treated differently than her. Regardless, Ms. Neill fails to allege any specific facts about who these male colleagues were or how they were similarly situated to Ms. Neill. Ms. Neill's inability to show that any similarly situated employee was treated differently conclusively precludes her from establishing pretext.

In sum, Frontier maintains that its decision not to promote Ms. Neill to the Senior Manager, Distribution and Sales Position and its decision to ultimately eliminate Plaintiff's

position were based upon legitimate, nondiscriminatory reasons and incorporates by reference all defenses raised in its Answer and Affirmative Defenses [ECF No. 25].

### 4. UNDISPUTED FACTS

The following facts are undisputed:

a. Frontier employed Plaintiff as a Distribution Manager from April 25, 2016 until February 19, 2018.

b. Plaintiff was reporting to Vice President, Marketing, Tyri Squyres at the time that her employment with Frontier ended on or around February 19, 2018.

### 5. COMPUTATION OF DAMAGES

a. **Plaintiff**: $300,000.00 Covers Compensatory damages to include mental anguish, inconvenience of having to relocate, loss of enjoyment of life, loss of opportunity. Plaintiff's medical doctor will attest to the mental anguish and panic attacks. Equitable relief to include adequate restitution for the charged offense. Back Pay: Defendant should be liable for the economic losses Plaintiff suffered because of the discrimination, including but not limited to the health insurance coverage, the travel benefits, bonus', 401K opportunities and all loss wages from February 18, 2018 to present.

b. **Defendants**: Defendants may seek their attorneys' fees and costs incurred in defending this action.

### 6. REPORT OF PRE-CONFERENCE DISCOVERY & MEETING UNDER FED. R. CIV. P. 26(f)

a. **Date of Rule 26(f) Conferral Meeting**

The Fed. R. Civ. P. 26(f) meeting was held on January 2, 2020 at 2:30 p.m.

b. **Names of each participant and party he/she represented.**

The following individuals participated in the meeting: Danielle Kitson and Carolyn Theis of Littler Mendelson represented Frontier and Ms. Neill participated without representation.

    **c.**    **Statement as to when Rule 26(a)(1) disclosures were made or will be made.**

The Parties have conferred over the initial disclosures deadline and have agreed to exchange their initial disclosures by January 24, 2020.

    **d.**    **Proposed changes, if any, in timing or requirement of disclosures under Fed. R. Civ. P. 26(a)(1).**

There are no proposed changes in requirement of disclosures under Fed. R. Civ. P. 26(a)(1) except with respect to initial disclosures, as indicated above.

    **e.**    **Statement concerning any agreements to conduct informal discovery:**

The parties do not have any agreements to conduct informal discovery.

    **f.**    **Statement concerning any other agreements or procedures to reduce discovery and other litigation costs, including the use of a unified exhibit numbering system.**

The parties have agreed to use a unified exhibit numbering system. The parties have also agreed to take all reasonable steps to reduce discovery and reduce costs.

    **g.**    **Statement as to whether the parties anticipate that their claims or defenses will involve extensive electronically stored information, or that a substantial amount of disclosure or discovery will involve information or records maintained in electronic form.**

The parties do not anticipate that their claims or defenses will involve extensive electronically stored information at this time.

    **h.**    **Statement summarizing the parties' discussions regarding the possibilities for promptly settling or resolving the case.**

The parties had preliminary discussions when Frontier presented Plaintiff with a severance package and have agreed to revisit possible settlement or other resolution of the case.

### 7.  CONSENT

All parties have consented to the exercise of jurisdiction of a magistrate judge.

### 8.  DISCOVERY LIMITATIONS

a. The Parties propose a limit of five (5) fact-witness depositions, exclusive of parties and experts, per side.

b. The Parties agree to limit the length of depositions of witnesses to seven (7) hours of actual deposition time. Additional time will only be permitted for good cause shown.

c. The Parties propose a limit of twenty-five (25) interrogatories to propound per side.

d. The Parties propose a limit of twenty-five (25) requests for production to propound per side.

d. The Parties propose a limit of twenty-five (25) requests for admissions to propound per side.

e. The Parties anticipate their submission to the Court of a proposed protective order no later than January 24, 2020 for its review and approval to accommodate the exchange of confidential documents and other information during the discovery process.

### 9.  CASE AND PLAN SCHEDULE

a. Deadline for Joinder of Parties and Amendment of Pleadings: **February 17, 2020.**

b. Discovery Cut-off: **July 24, 2020.**

c. Dispositive Motion Deadline: **September 7, 2020.**

9

d.    Expert Witness Disclosure:

      **1.    Anticipated fields of expert testimony:**

<u>Plaintiff's Statement as to Experts</u>: Plaintiff reserves the right to call her medical doctor of 27 years Thomas Simpson.

<u>Defendant's Statement as to Experts</u>:  At this time, Defendants do not anticipate the need for expert testimony, other than for rebuttal.

      **2.    Limitations which the parties propose on the use or number of expert witnesses.**

The Parties propose a limit of two (2) retained experts per side, not including rebuttal experts. The parties propose rebuttal expert limitations of one rebuttal expert in response to each affirmative expert.

The Parties shall designate all experts and provide opposing counsel with all information specified in Fed. R. Civ. P. 26(a)(2) on or before **June 9, 2020.**

The Parties shall designate all rebuttal experts and provide opposing counsel with all information specified in Fed. R. Civ. P. 26(a)(2) on or before **July 10, 2019.**

In addition to the requirements set forth in Rule 26(a)(2)(B)(I)-(vi), the expert's written report also must identify the principles and methods on which the expert relied in support of his/her opinions and describe how the expert applied those principles and methods reliably to the facts of the case relevant to the opinions set forth in the written report.

Dispositive Motion Deadline: **September 7, 2020.**

e.    Identification of Persons to Be Deposed:

Preliminary List of Plaintiff's Depositions:

| Name of Deponent | Expected Length of Deposition |
|---|---|
| Eric Engel | 5 hours |
| William Evans | 5 hours |
| Michael Pewether | 5 hours |
| Anthony Sabia, Human Resource | 5 hours |
| Tyre Squyres | 5 hours |

Preliminary List of Defendant's Depositions:

| Name of Deponent | Expected Length of Deposition |
|---|---|
| Raquell Neill | 7 hours |
|  |  |
|  |  |

  **f.** **Deadline for Interrogatories:**  Interrogatories must be served on the opposing party no later than **45 days before the discovery cutoff date, or June 9, 2020.**

Responses to the same are due as required by Fed. R. Civ. P. 6(d) and 33(b)(2).

  **g.** **Deadline for Requests for Production of Documents and/or Admissions:** Requests for Production of Documents and Requests for Admissions must be served on the opposing party no later than **45 days before the discovery cutoff date, or June 9, 2020.** Responses to the same are due as required by Fed. R. Civ. P. 6(a) and 34(b)(2).

### 10. DATES AND FURTHER CONFERENCES

  a. Status conferences will be held in this case at the following dates and times:

_____

_____

_____

11

      b.      A final pretrial conference will be held in this case on _____ at _____ o'clock \_\_.m. A Final Pretrial Order shall be prepared by the parties and submitted to the court no later than seven (7) days before the final pretrial conference.

## 11. OTHER SCHEDULING MATTERS

      a.      There are no discovery or scheduling issues on which counsel were unable to reach an agreement.

      b.      The Parties anticipate a three (3) day jury trial. Plaintiff has requested a trial to a jury.

      c.      There are no pretrial proceedings that the Parties believe may be more efficiently or economically conducted in any of the District Court's facilities outside of Denver, Colorado.

## 12. NOTICE TO COUNSEL AND *PRO SE* PARTIES

The parties filing motions for extension of time or continuances must comply with D.C.COLO.LCivR 6.1(c) by submitting proof that a copy of the motion has been served upon the moving attorney's client, all attorneys of record, and all *pro se* parties.

Counsel will be expected to be familiar with and to comply with the Pretrial and Trial Procedures or Practice Standards established by the judicial officer presiding over the trial of this case.

With respect to discovery disputes, parties must comply with D.C.COLO.LCivR 7.1(a).

Counsel and unrepresented parties are reminded that any change of contact information must be reported and filed with the Court pursuant to the applicable local rule.

## 13. AMENDMENTS TO SCHEDULING ORDER

The Scheduling Order may be altered or amended only upon a showing of good cause.

DATED at Denver, Colorado, this 21st day of January, 2020.

BY THE COURT:

_____

Hon. N. Reid Neureiter
Magistrate Judge

APPROVED:

*s/ Raquell Neill*
Raquell Neill
16569 Summit Drive
Omaha, NE 68136
Phone: 303-898-0032
Email: raquellneill@gmail.com

*Plaintiff (Pro Se)*

*s/ Carolyn B. Theis*
Danielle L. Kitson
Carolyn B. Theis
LITTLER MENDELSON, P.C.
1900 Sixteenth Street, Suite 800
Denver, CO 80202
Telephone: 303.629.6200
Facsimile: 303.629.0200
Email: dkitson@littler.com
catheis@littler.com

*Attorneys for Defendant*